IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 15, 2005 Session

## VERNON F. FRAME v. DAVIDSON TRANSIT ORGANIZATION

**Appeal from the Circuit Court for Davidson County**
**No. 03C-1101     Barbara N. Haynes, Judge**

**No. M2004-01960-COA-R3-CV- Filed September 6, 2005**

Former Fleet Manager of Davidson Transit Organization contends he was demoted because of his age in violation of the Tennessee Human Rights Act. Tenn. Code Ann. § 4-21-401(a)(1).  The employer conceded the employee had presented a prima facie case of employment discrimination; however, it contended a prima facie case was insufficient when the employer presented a non-discriminatory reason for its decision.  The trial court agreed.  The summary dismissal was based upon a finding the burden of proof had shifted back to the employee who was required to, but did not provide additional evidence of age discrimination.  An employee's prima facie case, combined with sufficient evidence to find the employer's stated reason for its employment decision  false may permit the trier of fact to conclude the employer unlawfully discriminated.  The employee provided evidence from which a jury could conclude the employer's stated reason for its employment decision was not credible, thus summary judgment was not appropriate.  We, therefore, vacate the summary dismissal and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacate and Remand**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

August C. Winter, Brentwood, Tennessee, for the appellant, Vernon F. Frame.

H. Rowan Leathers, III, Nashville, Tennessee, for the appellee, Davidson Transit Organization.

### OPINION

Davidson Transit Organization (DTO) is a private, non-profit corporation that maintains and operates the bus fleet for Metropolitan Transit Authority (MTA) of Nashville and Davidson County, Tennessee.  DTO  hired Fred Frame (Frame) as Fleet Manager in 1996, a position he held until he was demoted to apprentice mechanic in 2002.  As Fleet Manager, Frame was responsible for the operation of the maintenance department of the MTA bus fleet.  When Frame was first employed, his superiors identified specific issues within the maintenance department that needed improvement.

The areas that needed improvement included: timely completion of annual air conditioning inspections, efficient preventative maintenance and repair work, and ensuring were buses available for scheduled bus routes.

DTO evaluated employee performance annually during all six years Frame served as fleet manager. Frame served under the supervision of the Director of Equipment Services who was responsible for Frame's performance evaluations. For the first three years of his employment with DTO, Frame received overall satisfactory evaluations.[1]

In June 1999, DTO hired Robert Baulsir to replace the previous Director of Equipment Services. As a result, Baulsir became Frame's supervisor and was responsible for Frame's performance evaluation. Baulsir's evaluations of Frame's work performance were significantly less favorable than those written by Frame's three previous supervisors.[2] The second evaluation of Frame by Baulsir was more favorable than the first; however, the third and final evaluation by Baulsir was very negative.[3] In addition to the formal evaluations, Baulsir submitted periodic memos to Frame, criticizing Frame for a variety of deficiencies. The deficiencies noted by Baulsir included the failure to meet the annual air conditioning inspection deadline, reoccurring delays in bus inspection reports, insufficient bus availability to accomplish bus routes and failure to correct maintenance problems efficiently.[4] Frame provided written responses to Baulsir's memos explaining the deficiencies. In part, Frame stated the deficiencies were due to insufficient staffing, mandatory reduction of overtime hours, and the reduction of inventory for parts.

While Baulsir was criticizing Frame for maintenance department deficiencies, Baulsir was receiving positive performance evaluations from his supervisors for improvements in that department. Specifically, while Baulsir was criticizing Frame for insufficient bus availability, Baulsir was being complimented because, "virtually all runs were 'maintenance ready' for pull-out." Additionally, Baulsir was being commended because 100% of the fleet's air conditioners were operative and for achieving a "new record . . . in fleet reliability performance."

---

[1] DTO provides evaluation forms to supervisors in evaluating employee performance. The form provides the following ratings for employee performance: "Inconsistent", "Thorough", "Outstanding" or "Above the Call of Duty".

[2] Frame had three supervisors prior to Baulsir, Frances Hunter, Doff Stover and Autrey (whose first name is not in the record). Autrey supervised Frame for a brief period and the record does not contain an evaluation by Autrey.

[3] The first evaluation was for the period of July 1, 1999 through December 31, 1999; the second was for the period July 1, 2000 through December 31, 2000; and the third was for the period July 1, 2001 through December 31, 2001.

[4] The Memos issued by Baulsir were: 2/10/2000 RE: Bus Repairs; 2/15/2000 RE: Inspections, Parts Issues, Radio defects; 4/5/2000 RE: Bus Repairs; 4/20/2000 Mechanical defects on Elderly & Disabled buses; 9/29/2000 RE: Mechanical defects on Elderly & Disabled buses; 11/6/2000 RE: Poor work performance; 4/18/2001 RE: Poor Job Performance; 10/1/2001 RE: Poor Job Performance; 12/12/2001 RE: Request for time line on repairs for 11 buses; 3/1/2002 RE: Repeat Road Calls.

In April of 2002, Baulsir demoted Frame from the position of Fleet Manager to the position of apprentice mechanic, the lowest position in the department Frame had supervised for six years. Baulsir replaced Frame with a succession of two significantly younger men. The first to replace Frame was Paul Diforno, who was then replaced by Clayton Jackson. Frame was fifty-eight years old at the time of the demotion. Jackson was thirteen (13) years younger than Frame. The age of Diforno is not in the record.

Frame filed suit against DTO for age discrimination in violation of the Tennessee Human Rights Act. Tenn. Code Ann. § 4-21-401 (a)(1).[5] DTO answered the suit contending Frame was demoted for poor performance. Following discovery, DTO filed a motion for summary judgment. Significantly, DTO admitted that Frame had established a prima facie case of age discrimination; however, it contended it was entitled to summary judgment because it had set forth a legitimate non-discriminatory reason as evidenced by the performance evaluations, memos criticizing Frame's work, and disciplinary records.

Frame opposed the motion contending DTO's stated reason was a pretext because it was solely based upon Baulsir's stated reasons and Baulsir was not a credible witness. The focus of Frame's opposition to the motion for summary judgment was alleged inconsistencies between Baulsir's testimony and documentary evidence in the record. Specifically, Frame contends the case hinges on whether the fact finder believes Baulsir's stated reasons for the employment decision, that a jury could find Baulsir's stated reasons are not credible; therefore, a material fact is in dispute and summary judgment was not appropriate.

### STANDARD OF REVIEW

The issues were resolved in the trial court upon summary judgment. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Advertising & Publishing Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993); *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

---

[5] The statute reads, in part: "It is a discriminatory practice for an employer to: (1) Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin." Tenn. Code Ann. § 4-21-401 (a) (1).

Summary judgments are proper in virtually all civil cases that can be resolved on the basis of legal issues alone, *Byrd v. Hall*, 847 S.W.2d at 210; *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001); however, they are not appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. The party seeking a summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that party is entitled to judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d at 695. Summary judgment should be granted at the trial court level when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion, which is the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Webber v. State Farm Mutual Automobile Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001). The court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, discard all countervailing evidence, and, if there is a dispute as to any material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd v. Hall*, 847 S.W.2d at 210; *EVCO Corp. v. Ross*, 528 S.W.2d 20 (Tenn. 1975). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000).

## AGE DISCRIMINATION - THE ORDER AND NATURE OF PROOF

This is an age discrimination action brought pursuant to the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq*. The Act prohibits employers from discriminating against employees who are forty years of age or older because of their age. Tenn. Code Ann. § 4-21-101(a)(3) and (b). This includes a prohibition against age discrimination in fixing compensation or defining the terms and condition of employment. *Wilson*, 104 S.W.3d at 51. Promotion and demotion fall within such prohibitions. An employee seeking to recover for unlawful age discrimination must prove that age not only played a role in the employer's decision but that it determinatively influenced the decision. *Wilson v. Rubin*, 104 S.W.3d 39, 51-52 (Tenn. Ct. App. 2003) (citing *Hazen Paper Company v. Biggins*, 507 U.S. 604, 610 (1993); *Loeffler v. Kjellgren*, 884 S.W.2d 463, 469 (Tenn. Ct. App. 1994)).

There are two principal methods to prove age discrimination. *See Moore v. Nashville Electrical Power Board*, 72 S.W.3d 643, 651 (Tenn. Ct. App. 2001). One is by direct evidence of discrimination. *Id*. The other is by indirect proof of discrimination. *Id*. Direct evidence of intentional employment discrimination is seldom available to a plaintiff. Thus, most plaintiffs resort to the indirect method of proof. The case presented by our plaintiff, Mr. Frame, is based upon indirect evidence.

The evidentiary frame work for the presentation of proof via the indirect method is set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 794 (1973),[6] which Tennessee courts follow. *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, at 708 (Tenn. 2000); *Spann v. Abraham*, 36 S.W.3d 452, 465 (Tenn. Ct. App. 1999). Subtle yet significant refinements of that framework relevant to the issues presented are found in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) and the opinion of this court in *Wilson v. Rubin*, 104 S.W.3d 39 (Tenn. Ct. App. 2003).

The *McDonnell Douglas* framework requires the plaintiff carry the initial burden of proof under the statute by establishing a prima facie case of racial discrimination.[7] The framework further provides that once the plaintiff presents a prima facie case, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."[8] *Id.* at 802.

In *McDonnell Douglas* the plaintiff employee charged that he was denied re-employment[9] "because of his involvement in civil rights activities" and "because of his race and color." *Id.* at 801. The employer, McDonnell Douglas, denied discrimination, asserting that its failure to re-employ the plaintiff was based upon and justified by his previous participation in unlawful conduct at its plant. McDonnell Douglas had assigned the plaintiff's "participation in unlawful conduct against it" as the reason for not re-employing him. Both the Supreme Court and the Court of Appeals found the stated reason sufficient to meet the plaintiff's prima facie case of discrimination and, thus, to discharge McDonnell Douglas' burden of proof; however, the Supreme Court differed with the criteria employed by the Court of Appeals, noting that the Court of Appeals intimated, however, that McDonnell Douglas' stated reason for refusing to rehire the plaintiff was "a 'subjective' rather than objective criterion which 'carr[ies] little weight in rebutting charges of discrimination." *Id.* at 802 (citing 463 F.2d. at 343). The Supreme Court opined that the Court of Appeals "seriously

---

[6]The focus of the opinion was the "proper order and nature of proof in actions under Title VII of the Civil Rights Act of 1964." More specifically, the issue was the order and allocation of proof in "a private, non-class action challenging employment discrimination." *Id.*, 411 U.S. at 801.

[7]This may be done by showing (i) that he belongs to a [protected class]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *Id.* at 802.

[8]To establish a prima facie case of age discrimination using the indirect method of proof, an employee who has been demoted must demonstrate that he is a member of the protected class of persons forty years of age or older, that his work performance satisfied the employer's reasonable expectations, that he was actually or constructively [demoted], and that the demotion occurred under circumstances giving rise to an inference of discrimination based on age. The fourth element of a prima facie age discrimination claim may be satisfied by presenting proof that the employee was replaced by someone substantially younger. *Wilson*, 104 S.W.3d at 52 (*see also Moore v. Nashville Elec. Power Bd.*, 72 S.W.3d at 651-52 (holding that a prima facie case of age discrimination requires proof that an employee was replaced by a "younger person")).

[9]He was previously employed by McDonnell Douglas and applied for re-employment.

underestimated the rebuttal weight to which [McDonnell Douglas'] reasons were entitled." *Id*. at 803. The facts established by McDonnell Douglas were that the plaintiff "had taken part in a carefully planned 'stall- in,' designed to tie up access to and egress from petitioner's plant at a peak traffic hour." *Id*. at 803. The Supreme Court concluded that McDonnell Douglas' stated reason met the plaintiff's prima facie case, but the Court noted that "the inquiry must not end here."[10] *Id*. at 803. To the contrary, the Court remanded the matter with instruction that the employee be afforded a fair opportunity to show that McDonnell Douglas' stated reason for the plaintiff's rejection was in fact pretext.[11] *Id*.

Unfortunately, the *McDonnell Douglas* framework for the "proper order and nature of proof" did not provide total clarity. To the contrary, what followed were conflicting opinions from the Circuit Courts regarding the evidentiary significance of the shifting of the burdens when, as here, the employer provides a non-discriminatory reason for its employment decision. Specifically, the circuits differed concerning whether a plaintiff's prima facie case of discrimination, combined with sufficient evidence for a reasonable fact finder to reject the employer's nondiscriminatory explanation for its decision, was adequate to sustain a finding of liability for intentional discrimination. *Reeves*, 530 U.S. at 140. As a consequence, the Supreme Court granted certiorari in *Reeves* to resolve the growing conflict. As the *Reeves* court explained:

> Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S., at 253, 101 S.Ct. 1089. And in attempting to satisfy this burden, the plaintiff – once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision – must be afforded the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Ibid.; see also St. Mary's Honor Center*, supra, at 507-508, 113 S.Ct. 2742. That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination "by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, supra, at 256, 101 S.Ct. 1089. Moreover, although the presumption of discrimination "drops out of the picture" once the defendant meets its burden of production, *St. Mary's Honor Center*, supra, at 511, 113 S.Ct. 2742, the trier of fact

---

[10]The Supreme Court noted that the employee had carried his burden of establishing a prima facie case of racial discrimination and that McDonnell Douglas successfully rebutted the prima facie case, thus the employee "must be afforded a fair opportunity to demonstrate that [McDonnell Douglas'] assigned reason for refusing to re-employ was a pretext or discriminatory in its application.

[11]"While Title VII does not, without more, compel rehiring of [plaintiff], neither does it permit [McDonnell Douglas] to use [the plaintiff's] conduct as a pretext for the sort of discrimination prohibited by s 703(a)(1). On remand, [the plaintiff] must, as the Court of Appeals recognized, be afforded a fair opportunity to show that [McDonnell Douglas'] stated reason for [the plaintiff's] rejection was in fact pretext." *Id*. at 805. The Court further stated, "In short, on the retrial [the plaintiff] must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision." *Id*. at 806.

may still consider the evidence establishing the plaintiff's prima facie case "and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual," *Burdine*, supra, at 255, n. 10, 101 S.Ct. 1089.

*Id*. at 142-143.

The evidence supporting the employer's explanation in *Reeves* consisted primarily of testimony and documentation of "shoddy record keeping." The employee, however, made a substantial showing that the employer's explanation was false. He offered evidence that he had properly maintained records and he cast doubt on whether he was responsible for other alleged failures. Based on this evidence, the Court of Appeals concluded that petitioner "very well may be correct" that "a reasonable jury could have found that [the employer's] explanation for its employment decision was pretextual." *Id*. at 146 (citing *Reeves*, 97 F.3d. 688, 693 (5th Cir. 1999)). Nonetheless, the Court of Appeals held that this showing, standing alone, was insufficient to sustain the jury's finding of liability. *Id*. The Supreme Court, however, found that the Court of Appeals "misconceived the evidentiary burden borne by plaintiffs" by concluding that "a prima facie case of discrimination, combined with sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory reason for its decision, was insufficient as a matter of law." *Reeves*, 530 U.S. at 146. The Court of Appeals ignored the evidence supporting the employee's prima facie case and challenging the employer's explanation for its decision. *Id*. at 146. Thus, the Court of Appeals' erroneous assumption led it to confine its review of evidence favoring the employee to that evidence showing a supervisor had directed derogatory, age-based comments at the employee, and that the supervisor had singled out the employee for harsher treatment than younger employees. *Id*. at 146. Believing only this additional evidence of discrimination was relevant, the Court of Appeals found the additional evidence, standing alone, insufficient as a matter of law to sustain a jury's finding of intentional discrimination. *Id*. at 146. The Supreme Court found this to be reversible error, explaining:

> In so reasoning, the Court of Appeals misconceived the evidentiary burden borne by plaintiffs who attempt to prove intentional discrimination through indirect evidence. This much is evident from our decision in *St. Mary's Honor Center*. There we held that the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not compel judgment for the plaintiff. 509 U.S., at 511, 113 S.Ct. 2742. The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." *Id*., at 524, 113 S.Ct. 2742. In other words, "[i]t is not enough . . . to dis believe the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Id*., at 519, 113 S.Ct. 2742.
>
> In reaching this conclusion, however, we reasoned that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. Specifically, we stated:

"The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination." *Id.*, at 511, 113 S.Ct. 2742.

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. *See id.*, at 517, 113 S.Ct. 2742 ("[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination"). In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." *Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992); *see also Wilson v. United States*, 162 U.S. 613, 620- 621, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); 2 J. Wigmore, Evidence § 278(2), p. 133 (J. Chadbourn rev. 1979). Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Cf. *148 *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) ("[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts with some reason, based his decision on an impermissible consideration"). Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

*Reeves*, 530 U.S. at 146-48. The *Reeves* court further explained, "[t]his is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."[12] *Id*. at 148.

---

[12]"For instance, an employer is entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. *Reeves*, 530 U.S. at 148, *see Aka v. Washington Hospital Center*, 156 F.3d, at 1291-1292; *see also Fisher v. Vassar College*, 114 F.3d, at 1338 ("[I]f the circumstances show that the defendant gave the false explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent").

What is critically important to recognize is, if the employer's stated reason for its employment action is believed by the trier of fact, it would support a finding that unlawful discrimination was not the cause of the employment action. *Wilson* at 50 (citing *Bauer v. Albermarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999)). Thus, "[i]f the employer succeeds in carrying its burden of production, the presumption of discrimination drops out of the picture, and the trier of fact proceeds to decide the ultimate question of whether the employee has proved that the employer unlawfully discriminated against him or her." *Wilson* at 50 (citing *Reeves*, 530 U.S. at 142; *St. Mary's Honor Center*, 509 U.S. at 510-11). There is, however, a different evidentiary consequence if the employer's explanation is deemed to be not credible or, in the case of summary judgment, is both disputed and material. Thus, at the summary judgment phase, if the plaintiff succeeds in making the employer's stated non-discriminatory reason a disputed fact, then it is up to the fact-finder to resolve the factual dispute as well as the ultimate question – whether the employer discriminated against the employee because of his age.

As this court stated in *Wilson*, an employee may demonstrate that an employer's proffered, non-discriminatory reasons for an adverse employment action are pretextual by revealing the "weaknesses, implausibilies, inconsistencies, incoherencies, or contradictions" in the employer's explanation. *Wilson*, 104 S.W.3d at 50-51 (citing *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002). Of the three most common ways to undermine an employer's proffered reasons, one is establishing that the proffered reasons have no basis in fact. *Wilson*, 104 S.W.3d at 50-51 (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000); *Cliff v. Board of School Commissioners*, 42 F.3d 403, 412 (7th Cir. 1994); *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir.1993); *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d at 708). Proof that an employer's explanation is unworthy of credence is a persuasive way to prove unlawful discrimination. *Wilson*, 104 S.W.3d at 51; *see also Reeves*, 530 U.S. at 147-48.

## ANALYSIS

Having identified the controlling law as to the order and nature of proof in an age discrimination action, we now consider the merits of the appeal. The action was dismissed upon summary judgment. Thus, we are not concerned with whether or not Frame will ultimately prevail on his cause of action, but rather whether or not reasonable minds may differ as to the weight and effect of the evidence concerning the reason for the employment decision at issue.

Frame contends the court erred in granting summary judgment because DTO's motion was solely based upon the legitimacy of its stated reason for the employment action, the stated reason was solely based upon Baulsir's testimony, and Baulsir's credibility was hotly disputed.

Whether summary judgment is appropriate in a particular case will depend on a number of factors including the strength of "the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves,* 530 U.S. at 148-49.

Frame made out a prima facie case by showing that he was within the protected class (58 years old), he had experienced an adverse employment action in a job for which he was qualified and his replacement was significantly younger.

DTO admits Frame presented a prima facie case of age discrimination. Nevertheless, DTO contends it did not violate the Act because its employment action was based upon Frame's qualifications for the job, his poor job performance. DTO's stated reason for its employment action was a poor job performance by Frame, which constitutes a challenge to Frame's qualifications for the job.[13] If valid, such a reason for an employment action, age notwithstanding, may entitle DTO to summary judgment. However, Frame countered by presenting sufficient evidence to create a disputed question as to the validity of the stated reason for the employment action. That evidence, considered in the light most favorable to Frame, tells us that while Frame was serving as Fleet Manager:

- Baulsir criticized Frame for insufficient bus availability at pull-out while Baulsir was commended because "virtually all [bus] runs were 'maintenance ready' for pull-out."

- Baulsir criticized Frame for not meeting deadlines for inspection of air conditioners while Baulsir was commended because the bus fleet had become 100% air conditioning operative.

- Baulsir criticized Frame because the maintenance department was a "mess" yet the buses were meeting performance objectives by going more miles between road service repair calls.

- Baulsir criticized Frame for his "awful" performance while Baulsir was commended because "a new record performance in fleet reliability performance" was reached.

The evidence considered in the light most favorable to Frame also tells us that Frame was replaced as Fleet Manager by a much younger man and, in spite of his years of experience, Frame was demoted to the entry level position of apprentice mechanic.

DTO's motion for summary judgment was based upon one contention, that it had stated a non-discriminatory reason for the employment action which trumped Frame's prima facie case as a matter of law. Frame, however, responded to DTO's motion with additional evidence challenging the credibility of Baulsir. A challenge of Baulsir's credibility constituted a challenge of the validity of the stated reason for DTO's employment action. See *Wilson*, 104 S.W.3d at 50-51 (citing *Garrett*, 305 F.3d at 1217)(holding an employee may demonstrate that an employer's stated non-discriminatory reasons for an adverse employment action are pretextual by revealing the "weaknesses, . . . inconsistencies, . . . or contradictions" in the employer's explanation).

Though Frame established a prima facie case of age discrimination and presented evidence to rebut DTO's claimed defense – the stated reason for its employment action – the trial court stated

---

[13] An element of a prima facie case is that the employee is qualified. *See McDonnell Douglas*, 411 U.S. at 801.

at the hearing on the motion that Frame needed to present additional proof of age discrimination to withstand summary dismissal. We believe this placed an erroneous and excessive burden of proof on Frame at the summary judgment phase.

The trial court may not have fully appreciated the significance and effect of the evidence Frame introduced to challenge the credibility and validity of DTO's stated reason for its employment action. This is because Frame satisfied the perceived additional burden of proof when he presented evidence that challenged the basis in fact and the validity of DTO's stated reason for its employment action. A successful challenge of the employer's stated reason for the employment action may serve not one, but two, functions. The first function is obvious, to negate the defense claimed. The other function is less obvious. That is, if the trier of fact finds the stated reason for the employment action has no basis in fact, it may also find the falsity of the stated defense proof of unlawful discrimination. As discussed in greater detail above, undermining an employer's stated reason for its employment action by establishing the stated reason has no basis in fact not only serves to demonstrate that the stated reason is pretextual, it can also be a persuasive way to prove unlawful discrimination. *Wilson*, 104 S.W.3d at 50-51 (citing *Dews*, 231 F.3d at 1021; *Garrett*, 305 F.3d at 1217); *see also Cliff*, 42 F.3d 403 at 412; *McNabola*, 10 F.3d at 513; *Barnes*, 48 S.W.3d at 708; *Reeves*, 530 U.S. at 147-48. Therefore, by presenting evidence to challenge the basis in fact of DTO's stated reason for its employment action, Frame put into play evidence from which the trier of fact could find that DTO's stated reason was a pretext for unlawful discrimination. Moreover, by putting at issue the validity of the stated reason for the employment action, Frame rebutted the shift in the burden of proof found in *McDonnell Douglas, Reeves* and their progeny.

What is significant, for purposes of summary judgment, is that DTO's defense is based upon the testimony, and thus credibility, of Frame's supervisor, Robert Baulsir. The stated reason for DTO's employment action is a material issue. That issue, the validity of the defense, is almost entirely dependent upon Baulsir's testimony. Thus, Baulsir's credibility is a material issue. Considering the evidence in the light most favorable to Frame, as we are required to do at the summary judgment phase, we find that facts material to the defense upon which DTO's summary judgment motion is predicated are disputed. This is because Frame successfully put Baulsir's credibility and the validity of the claimed defense at issue. Since the claim upon which DTO's defense is based is at issue, summary dismissal is not appropriate.

We therefore vacate the order dismissing this action and remand to the trial court for further proceedings. Costs of appeal are assessed against appellee, Davidson Transit Organization.

_____
FRANK G. CLEMENT, JR., JUDGE

-11-