# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
April 20, 2016 Session

## DENNIS VAWTER v. E. I. DU PONT DE NEMOURS AND COMPANY

**Appeal from the Circuit Court for Shelby County**
**No. CT-002424-13    Robert L. Childers, Judge**

_____

**No. W2015-00874-COA-R3-CV – Filed June 2, 2016**

_____

A 59-year old plaintiff who lost his job as a chemical operator, after working in that position for over 37 years, applied for the position of general operator with another company. Twelve individuals were hired by the other company, all of whom were younger than the 59-year old, and most of whom were less experienced. The plaintiff filed an age discrimination complaint against the company. The case was tried by a jury, and the jury returned a verdict for the plaintiff, awarding him compensatory damages of $100,000. The trial court awarded the plaintiff front pay in addition to the compensatory damage award. The company appealed, and we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Tennessee Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which KENNY W. ARMSTRONG and BRANDON O. GIBSON, JJ., joined.

James C. Bradshaw, III, and Elise C. Hofer, Nashville, Tennessee, for the appellant, E. I. du Pont de Nemours and Company.

Dan M. Norwood, Memphis, Tennessee, for the appellee, Dennis Vawter.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Dennis Vawter worked for a chemical plant owned by Velsicol Chemical Corporation for 37 ½ years before losing his job in December 2011, when the plant closed. In March 2012, when he was 59 years old, Mr. Vawter applied for a general operator position at a plant owned by E. I. du Pont de Nemours and Company ("du

Pont"). Out of 421 who applied for the job, Mr. Vawter was among the 140 applicants selected to take the general operator exam. Mr. Vawter passed the exam along with 77 others. Du Pont invited 34 of these individuals to interview for the general operator position, including Mr. Vawter. Du Pont hired twelve of the 34 candidates interviewed, but Mr. Vawter was not one of these twelve. One of the individuals hired was Chris Davis, who was at least twenty years younger and less experienced than Mr. Vawter and was someone with whom Mr. Vawter had worked at Velsicol Chemical. Mr. Vawter continued his search for employment and was ultimately hired as an operator by Veolia Water North America in September 2012. Mr. Vawter was earning approximately $25.00 an hour at Velsicol Chemical before the plant was shut down, and Veolia Water paid him just $14.50 an hour.[1] If he had been hired by Du Pont, Mr. Vawter would have had a starting pay rate of $24.57 an hour.

Mr. Vawter filed a complaint against du Pont in June 2013 alleging age discrimination pursuant to the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.* Du Pont defended its decision not to offer the position to Mr. Vawter by explaining that Mr. Vawter did not interview well and that its decision had nothing to do with his age. Mr. Vawter asserts that he was among the more experienced of the applicants and the only explanation for du Pont's decision not to hire him was his age.

Mr. Vawter's case was tried before a jury. Du Pont moved for a directed verdict at the conclusion of Mr. Vawter's presentation of evidence, which the trial court denied. The jury returned a verdict for Mr. Vawter and awarded him compensatory damages in the amount of $100,000. Du Pont moved the court to set aside the jury verdict, suggest a remittitur or, in the alternative, to order a new trial. The trial court denied du Pont's motion, finding that the preponderance of the evidence supported the jury's verdict. The trial court then awarded Mr. Vawter his attorney's fees in the amount of $74,200 and costs and expenses in the amount of $1,607. Mr. Vawter asked the court to order du Pont to hire him for the general operator position, but the court denied this request. Mr. Vawter then asked the court to award him front pay. The trial court determined that Mr. Vawter was entitled to front pay for a period of three years and awarded him an additional $112,120.07.

Du Pont appeals the trial court's awards. It argues (1) the jury's verdict that Mr. Vawter was discriminated against when he was not hired in 2012 should be set aside because it was not supported by material evidence; (2) the trial court erred in denying its motion for directed verdict or motion for a new trial on the basis that Mr. Vawter failed to produce material evidence of age discrimination; (3) the trial court erred in denying du Pont's motion for remittitur because the jury's award for compensatory damages is

---

[1]Mr. Vawter was given a $.15 raise once he had been at Veolia Water for a few months, and at the time of trial was being paid $15.02 an hour.

excessive and is not supported by material evidence; and (4) the trial court's award of front pay is excessive, punitive, and unwarranted.

## II. STANDARD OF REVIEW

Mr. Vawter's case was heard by a jury, and the jury awarded Mr. Vawter $100,000 based on its finding that du Pont engaged in age discrimination when it failed to hire Mr. Vawter for the general operator position. Tennessee Rule of Appellate Procedure 13(d) states: "Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict." An appellate court's review of a jury verdict is thus limited to determining whether any "material evidence" supports the verdict. *Ferguson v. Middle Tenn. State Univ.*, 451 S.W.3d 375, 380 (Tenn. 2014); *see Potter v. Ford Motor Co.*, 213 S.W.3d 264, 269 (Tenn. Ct. App. 2006) (citing *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994); *Whaley v. Rheem Mfg. Co.*, 900 S.W.2d 296, 300 (Tenn. Ct. App. 1995)) ("Where the record contains material evidence supporting the verdict, the judgment based on that verdict will not be disturbed on appeal."). When determining whether evidentiary support exists to support a jury's verdict, an appellate court is "very deferential toward the verdict." *Duran v. Hyundai Motor Am.*, 271 S.W.3d 178, 204 (Tenn. Ct. App. 2008). In determining whether material evidence supports a jury's verdict in a case, the Tennessee Supreme Court has said:

> [W]e "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence."

*Ferguson*, 451 S.W.3d at 380 (quoting *Creech v. Addington*, 281 S.W.3d 363, 372 (Tenn. 2009)); *see also Duran*, 271 S.W.3d at 204. The *Duran* court noted that "[a]ppellate courts are not a jury of three with the prerogative to re-weigh the evidence, or to determine where the 'truth' lies." *Duran*, 271 S.W.3d at 205 (citations omitted). Moreover, appellate courts are not permitted to substitute their judgment for that of the jury, even when the evidence could have supported a different verdict. *Id.* (citations omitted).

## III. ANALYSIS

### A. Age Discrimination

The purpose of the THRA is to protect individuals in Tennessee from discrimination in employment and public accommodations because of their race, creed, color, religion, sex, age, or national origin and to protect individuals from housing discrimination because of their race, creed, color, religion, sex, or national origin. Tenn.

3

Code Ann. § 4-21-101(a)(3). Section 4-21-401(a) of the THRA states that "[i]t is a discriminatory practice for an employer to . . . [f]ail or refuse to hire . . . any person . . . because of such individual's . . . age . . . ." An individual must be at least forty years old to establish an unlawful discrimination claim based on age. Tenn. Code Ann. § 4-21-101(b). The THRA was modeled on the federal anti-discrimination laws, and "Tennessee's courts regularly consult the decisions of their federal counterparts for guidance when called upon to construe and apply the Tennessee Human Rights Act." *Wilson v. Rubin*, 104 S.W.3d 39, 48 (Tenn. Ct. App. 2002).

A plaintiff asserting a claim for age discrimination "bears the ultimate burden of proving that considerations of age not only played a role in but determinatively influenced the employer's decision." *Williams v. Greater Chattanooga Pub. Television Corp.*, 349 S.W.3d 501, 509 (Tenn. Ct. App. 2011) (citing *Wilson*, 104 S.W.3d at 51-52); *see also* Tenn. Code Ann. § 4-21-311(e) (stating that plaintiff carries burden of "establishing a prima facie case of intentional discrimination"). A plaintiff can prove age discrimination through either direct or indirect evidence of discrimination. *Frame v. Davidson Transit Org.*, 194 S.W.3d 429, 434 (Tenn. Ct. App. 2005). Direct evidence of discrimination is not often available. *Id.* If a plaintiff lacks direct proof of an employer's discrimination, the plaintiff can satisfy his or her burden of proof by presenting indirect evidence of discrimination by establishing that:

> "(1) [he or] she was a member of the protected class" (at least 40 years old);
> "(2) [he or] she applied for and was qualified for the position" in question;
> "(3) [he or] she was considered for and denied the position; and (4) [he or] she was rejected in favor" of a substantially younger person with similar qualification.

*Trudeau v. Dep't of Labor and Workforce Dev.*, W2003-01920-COA-R3-CV, 2004 WL 2439404, at *3 (Tenn. Ct. App. Oct. 26, 2004) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir.1998); *Betkerur v. Aultman Hospital Assoc.*, 78 F.3d 1079, 1095 (6th Cir.1996)); *see also Williams*, 349 S.W.3d at 510 (stating same sort of proof required to establish liability for unlawful termination as for failure to hire). If a plaintiff provides evidence of each of these four factors, the defendant must then "proffer a legitimate, nondiscriminatory reason for its actions" not hiring the plaintiff. *Trudeau*, 2004 WL 2439404, at *3; *see* Tenn. Code Ann. § 4-21-311(e) (providing that if plaintiff establishes prima facie case, defendant must show employment decision was legitimate and not discriminatory). If the defendant meets this burden, the plaintiff must then "rebut this with evidence that the asserted nondiscriminatory reason is mere pretext for discrimination." *Trudeau*, 2004 WL 2439404, at 3 (citing *Bush*, 161 F.3d at 369); *see* Tenn. Code Ann. § 4-21-311(e) (if defendant rebuts presumption of discrimination, plaintiff must show defendant's alleged nondiscriminatory explanation was pretextual and not real reason).

4

Mr. Vawter presented evidence that he is in the class of protected individuals, that he applied for and was qualified for the general operator position, that he was considered for and denied the position, and that a younger (and less experienced) individual named Chris Davis was hired. Mr. Vawter testified that he had worked with Mr. Davis at Velsicol Chemical for two to three years, before the Velsicol plant was shut down, and that Mr. Davis was about twenty years younger than he was. Mr. Vawter testified that none of the twelve individuals du Pont hired for the General Operator position had as many years of experience as he did working as a chemical operator and that all of them were younger than he was. Four of the twelve candidates du Pont hired had no chemical operator experience at all.

Mr. Vawter testified about the final step of the hiring process, which consisted of two hour-long interviews by two different panels:

Q:     [W]ere you familiar with the questions and situations they were presenting to you in the interview?

A:     I was.

Q:     Anything really shock you that you were totally unfamiliar with?

A:     No.

Q:     Was it about chemical operator type information?

A:     Yes, it was. It involved just different scenarios, what you'd do in certain situations, maybe in an emergency or how you would handle certain situations that might happen out in the plant or certain situations [you] might come across in your prior experiences.

Q:     Okay. And did you get presented with any situations you never had heard about or addressed in your 37 ½ years working as chemical operator at Velsicol?

A:     No.

Q:     Do you believe you provided satisfactory answers to the panel?

A:     I believe I did.

Q:     In both interviews?

A:     Yes.

Q:     Did you receive any negative feedback from either one of those panels or anybody on the panels?

A:    No.

Q:    Mr. Vawter, from all the documents you've been able to review on the other individuals hired to fill the operator position at Du Pont in 2012 at its Millington plant, why do you believe the company didn't hire you?

A:    Well, the only conclusion I could come to was - - I had the 37 ½ years' experience and 25 to 28 of those years was the chemical operator position at the Velsicol plant. I thought - - and I was more than qualified for that position. It paralleled well with my former chemical operator experience so that, basically, I thought I was a shoo-in. And then to learn that 12 - - 12 people they did hire, like eight of them were in their 30s and four were in their 40s, and I was 59 at that time; that was the only logical explanation why I was not hired because I had plenty of experience.

Du Pont contends that Mr. Vawter was not qualified for the general operator position because he performed poorly during the interview process, which du Pont described as "the determining factor in which candidates received job offers." Brian Richard Morris was a du Pont employee who was on one of the panels that interviewed Mr. Vawter, and he testified that age was not a consideration when du Pont made its hiring decisions. Mr. Morris also testified that the reason du Pont was interested in hiring so many general operators was because du Pont "anticipated a high level of turnover in the coming years." Mr. Morris explained that "the minimum threshold for most retirement" at du Pont was age 58 ½, which was one year younger than Mr. Vawter was when he interviewed for the position.

According to Mr. Morris, Mr. Vawter did not do well in the interview process. He explained that du Pont did not extend offers to several experienced chemical operators as a result of their interviews. Mr. Morris testified that experience is important and constitutes a part of the evaluation of who to hire, but it is not the only criterion. Mr. Morris elaborated as follows:

The interview is designed to better understand the depth of their experience; you know, can they give us relevant examples and make us feel comfortable that, given their years of experience, that they've learned and internalized the behaviors and the knowledge that we're looking for.

We're also looking for softer skills in the interview process: communication; how well do they present ideas; how well do they - - can they troubleshoot; can they resolve conflict; can they handle difficult situations, stress? You know we handle a lot of hazardous materials, so we want people that we are confident can, you know, deal with those chemicals and in a safe manner and respond to emergencies if needed and can work in a self-managed work environment.

We don't have direct line supervisors on shift with our operators, our chemical operators, and oftentimes, that can be a challenge. And someone who has experience, they may have gotten line direction from a shift supervisor at their previous experience, whereas we have to have a self-managed team. So they have to work collaboratively together, you know, alone, and make decisions on their own.

The evidence showed that each of the 34 candidates was interviewed before the hiring decisions were made and that each candidate was asked the same questions. The candidates' responses were scored on a scale of one to five, where one was the lowest score and five was the highest score. The highest possible score a candidate could get was forty. Mr. Vawter scored a seventeen, which was the fourth lowest score of any candidate who was interviewed. Some members of the interview panels took notes during the candidates' interviews, but those notes were not maintained by du Pont. Mr. Vawter requested the notes from du Pont during discovery, and du Pont informed Mr. Vawter that the notes had been "destroyed." Thus, du Pont's proof that Mr. Vawter did not interview well was limited to testimony from individuals involved with the interviews and the final interview rating grid indicating each candidates' interview score. The only information included on the rating grid concerning Mr. Vawter was: "Operator at Velsicol, plant closed down. Was difficult to get any examples to build STARS."[2]

Du Pont contends that Mr. Vawter's low interview score constituted a legitimate, non-discriminatory reason for its decision not to hire him for the general operator position and that Mr. Vawter failed to introduce evidence demonstrating that its explanation was pretextual. Mr. Vawter responds that without the interview notes, the members of the jury were required to assess the testimony and credibility of all of the witnesses to make a factual determination of how Mr. Vawter performed answering the interview questions. As Mr. Vawter points out, he testified that he provided satisfactory answers to both interview panels and that he believed the interviews went well. Mr. Vawter's testimony that the interviews went well is some evidence that du Pont's explanation of why it did not extend Mr. Vawter an offer was pretextual.

It is not our place to "re-weigh the evidence." *Ferguson*, 451 S.W.3d at 380 (citing *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 532 (Tenn. 2008)). Moreover, appellate courts cannot "recalibrate the jury's preponderance of the evidence

---

[2]Du Pont's witness Pauline Brotsman-Brown explained what a STAR was in the interview context:

> "ST" stands for situation or a task; "A" is for action that the person took; "R" is for results that he or she received. So the [candidate's] answer has to build a STAR, and so if the answer is given and the candidate earns a STAR, then they get a full STAR. And when candidates are difficult to get - - have difficulty with building STARs, it means they just don't present the examples in a way that are very specific and they're very generalized, or it's even difficult to kind of draw information out of them.

assessment." *Id.* (citing *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000)). "Questions concerning the credibility of witnesses, the weight and value of the evidence, as well as all factual disputes raised by the evidence, are for the trier of fact; appellate courts do not reweigh the evidence or reevaluate credibility determinations." *State v. Flake*, 88 S.W.3d 540, 554 (Tenn. 2002).

Applying the standard of review to the evidence presented at trial leads us to conclude that there was material evidence to support the jury verdict finding du Pont engaged in age discrimination in failing to offer Mr. Vawter a position as a general operator.

B.  Compensatory Damages Awarded

Du Pont argues that the $100,000 the jury awarded as compensatory damages was excessive and was not supported by material evidence. Mr. Vawter alleged the following in his complaint:

> As a result of [du Pont's] discrimination in hiring, Plaintiff has suffered, and will continue to suffer, a loss of considerable pay and benefits, as well as mental distress, humiliation and embarrassment, and loss of enjoyment of life. Plaintiff avers that he is, therefore, entitled to recover all lost pay and benefits, with interest, plus compensatory damages to compensate for his injury and make him whole for all losses suffered, including damages for mental distress, humiliation and embarrassment, as well as recover his attorney's fees and expenses.

In his prayer for damages, Mr. Vawter sought his lost pay and benefits as well as compensatory damages in the amount of $500,000. He presented evidence that the difference in pay between the amount he would have earned at du Pont and the amount he was then earning at a less desirable job was $42,991.16. Mr. Vawter also presented evidence that he suffered embarrassment and humiliation as a result of not being offered the general operator position that he was certain he was qualified for and then learning that someone twenty years younger with whom he had worked and knew was less qualified had been offered the position. Mr. Vawter testified as follows:

> Q:    How did you feel when you first found out that this younger person that you knew and had less experience than you . . . was hired at du Pont instead of you?
>
> A:    Well, I mean, it was a great - - it was a great let-down. I mean, I had been employed all those years at Velsicol Chemical, and I didn't know anything else. I worked all my life, and - - and I was striving to find employment as soon as I lost my job at Velsicol Chemical back in December of 2011.

8

. . .

> I mean, it's - - I don't know how to explain it, but you know, as a kid when you're growing up and you're playing sports or games, you know, and they are picking teams or whatever - - it's the only thing I can relate it to, so I'm just going back to childhood - - is when you were the last one picked for the team or you wasn't picked at all, that's how it felt, in a way.

. . .

> Q:    How is - - what did you feel like, as a person at 59 online every day looking at all these jobs and applying for jobs and never hearing anything?

> A:    It was humiliating, humiliating and depressing. You know, like I said, after working all those years at one place, 37 ½ years at Velsicol, I didn't know anything else, so when I did lose my job, this was all new to me, you know, because I really hadn't had to look for a job for that many years.

Mr. Vawter further testified that in addition to working full-time at Veolia, he was required to work overtime. He explained that he generally worked forty to fifty hours overtime in a two-week period, he was tired all the time now, and he did not have the energy or time to do things with his family as he would have liked.

The jury here did not specify how it arrived at the $100,000 award. Du Pont assumes it awarded Mr. Vawter $57,008.84 for his humiliation and embarrassment based on Mr. Vawter's evidence that he suffered a loss of $42,991.16 in lost wages up to the time of trial. The THRA specifically provides for the payment of damages to a complainant asserting unlawful discrimination for injuries caused by the discrimination, "including humiliation and embarrassment." Tenn. Code Ann. § 4-21-306(a)(7). "The amount of such damages is primarily within the ambit of the jury, and is largely dependent on the jury's perception of the personal shame articulated by the discharged employee." *Barnes v. Goodyear Tire & Rubber Co.*, No. 2000-01607-COA-RM-CV, 2001 WL 568033, at *9 (Tenn. Ct. App. May 25, 2001). In another case where a plaintiff was discharged and filed an age discrimination case against his employer, the Court of Appeals addressed the proper amount of damages to be awarded for humiliation and embarrassment:

> The amount is peculiarly within the province of the jury subject to the rule of reasonableness, and necessarily depends on the articulation of personal shame experienced by the discharged plaintiff together with the jury's perception of his sensitivities. A summary discharge on account of age might be devastating to a person of refinement and gentle nature, while of little consequence to a person less sensitive or more calloused.

9

*McDowell v. Shoffner Indus. Of Tenn., Inc.*, No. 03A01-9301-CH00030, 1993 WL 262846, at *4 (Tenn. Ct. App. July 13, 1993)). "The analysis is necessarily subjective in nature." *Boone v. City of Lavergne*, No. M2010-00052-COA-R3-CV, 2011 WL 553757, at *11 (Tenn. Ct. App. Feb. 16, 2011).

In response to du Pont's post-trial motions, the trial court found the preponderance of the evidence supported the jury's verdict and denied du Pont's motion to suggest a remittitur. Unlike the trial court, we did not have the opportunity to observe Mr. Vawter's demeanor or credibility and have no way of judging the degree of embarrassment and humiliation Mr. Vawter suffered as a result of du Pont's failure to offer him a job. We have no basis upon which to rule that the amount of damages the jury determined was appropriate to award Mr. Vawter, and that the trial court approved after observing him testify, was unreasonable.[3] As a result, we affirm the trial court's judgment awarding Mr. Vawter $100,000 in compensatory damages. *See Boone*, 2011 WL 553757, at *13 (in THRA case where jury awarded damages for embarrassment and humiliation, Court of Appeals stated "appellate courts must support the amount approved by the trial court if there is material evidence to support the verdict").

C. <u>Front Pay Award</u>

Du Pont's final argument is that the trial court erred in awarding Mr. Vawter front pay for three years in the amount of $112,120.07. When the trial court refused Mr. Vawter's request to require du Pont to hire him for the general operator position, Mr. Vawter sought an award of front pay. Front pay is a monetary award used to compensate a plaintiff for the loss of future earnings and is available as a remedy in cases of employment discrimination when reinstatement is not available as a remedy. *Coffey v. Fayette Tubular Prod.*, 929 S.W.2d 326, 332 (Tenn. 1996). Front pay is inherently speculative because of its prospective nature, and so the courts of this state consider certain factors to determine whether front pay may be appropriate in a particular situation. *Id.* These factors were announced in a case involving a termination rather than a failure to hire, and they include the following:

> (1) the employee's future in his or her old job; (2) the employee's work and life expectancy; (3) the employee's obligation to mitigate his or her damages; (4) the availability of comparable employment opportunities and the time reasonably required to find another job; and (5) the amount of any award for liquidated or punitive damages.

---

[3]Du Pont points out that the humiliation and embarrassment Mr. Vawter suffered was not entirely due to du Pont's failure to hire him, but also resulted from his overall disappointment about not being employed. We do not believe this distinction renders the award unreasonable, however. The jury could have found, based on the evidence introduced, that Mr. Vawter's embarrassment and humiliation did not end when he was hired by Veolia because Veolia paid him considerably less than du Pont would have, and he was required to work so many more hours each pay period than he would have at du Pont.

*Sasser v. Averitt Express, Inc.*, 839 S.W.2d 422, 434 (Tenn. Ct. App. 1992). Mr. Vawter's situation differs from the plaintiffs' situations in *Sasser v. Averitt Express, Inc.*, 839 S.W.2d at 425-26, and *Coffey v. Fayette Tubular Products*, 929 S.W.2d at 327, because the *Sasser* and *Coffee* plaintiffs were employees who were terminated, whereas Mr. Vawter was a potential employee who was not hired. All three plaintiffs alleged employment discrimination, however, and the analysis is similar to determine whether or not an award of front pay is appropriate.

Mr. Vawter submitted an expert's report in support of his request for an award of front pay.[4] The expert estimated that Mr. Vawter had 5.53 years of working life left, which was based on Mr. Vawter's age of 63 in December 2014, his health, education level, and worklife tables. The expert then presented two different scenarios to calculate the difference in earnings between the job Mr. Vawter had at Veolia Water and the amount he would earn if he were working at du Pont as a general operator. The first scenario considered Mr. Vawter's wages excluding the overtime hours he was required to work at Veolia based on the evidence that du Pont does not require its general operators to work overtime, and the second scenario considered Mr. Vawter's wages including the overtime hours. The net present value of the first scenario was calculated to be $131,917.86, and the net present value of the second scenario was calculated to be $86,129.06. The trial court considered the expert's report and determined that Mr. Vawter was entitled to front pay for three years in the amount of $112,120.07 based on the first scenario.

Du Pont asserts the trial court erred in awarding Mr. Vawter any amount of front pay on the basis that Mr. Vawter was fully compensated by being awarded his attorney's fees and costs, in addition to the compensatory award of $100,000, and argues that the award of front pay would constitute a windfall to Mr. Vawter. Du Pont also points out that the Court of Appeals in *Sasser* opined that front pay is "a special remedy, not necessarily warranted in every case but reserved for only the most egregious circumstances." *Sasser*, 839 S.W.2d at 433. According to one of the cases *Sasser* cites in support of this statement, however, awarding front pay to a 41-year old employee who was discriminatorily discharged might not be warranted, but "the failure to make such an award for an employee age 63 . . . might be an abuse of discretion." *Davis v. Combustion Eng'g, Inc.*, 742 F.2d 916, 923 (6th Cir. 1984).

The decision whether to award a plaintiff front pay in an employment discrimination case is "governed by the sound discretion of the trial court." *Davis*, 742 F.2d at 923. "A court abuses its discretion when it causes an injustice to the party

---

[4]Du Pont initially objected to the report and sought an opportunity to depose Mr. Vawter's expert and/or obtain its own expert and report, but du Pont later decided not to depose Mr. Vawter's expert or submit alternative expert proof. The trial court thus considered Mr. Vawter's motion with only the expert report submitted by Mr. Vawter as evidence.

11

challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). This standard of review involves a less rigorous review of the trial court's decision and a lower likelihood that the decision will be reversed on appeal. *Id.* "It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives [and] does not permit reviewing courts to second-guess the court below, or to substitute their discretion for the lower court's." *Id*. (citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999); *White v. Vanderbilt Univ*., 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); and *Myint v. Allstate Ins. Co*., 970 S.W.2d 920, 927 (Tenn. 1998)).

The trial court, not the jury, determined the propriety and amount of front pay to award Mr. Vawter. *See Sasser*, 839 S.W.2d at 435 (determining whether to award front pay and the appropriate amount is a function for the court rather than the jury). Considering the factors set forth above, we find the trial court did not abuse its discretion by awarding Mr. Vawter front pay. The evidence at trial indicated that Mr. Vawter is in good health and anticipates working for at least another few years. He mitigated his damages by engaging in an intense search for employment immediately after he lost his job with Velsicol Chemical and then accepting the best job he could find, working for Veolia Water. No evidence was submitted suggesting he is likely to find alternative employment at this point in his life. Finally, he was not awarded liquidated or punitive damages. The award of front pay contributes to making Mr. Vawter whole and placing him closer to where he would have been had du Pont offered him the position of general operator in 2012. *See Sasser*, 839 S.W.2d at 433 (stating that in the employment discrimination context, front pay and back pay awards help make plaintiff "whole").

## IV. CONCLUSION

We affirm the judgment of the trial court in all respects. Costs of this appeal shall be taxed to the appellant, E. I. du Pont de Nemours and Company, for which execution shall issue if necessary.

_____
ANDY D. BENNETT, JUDGE