IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 2, 2018 Session

## SUSAN R. TEMPLETON v. MACON COUNTY, TENNESSEE, BOARD OF EDUCATION

**Appeal from the Circuit Court for Macon County**
**No. 2015-CV-34     John D. Wootten, Jr., Judge**

_____

### No. M2017-02544-COA-R3-CV

_____

A 62-year-old former employee of the Macon County School System sued the Board of Education on the grounds of age discrimination and retaliation under the Tennessee Human Rights Act. She alleged that her supervisor, the school principal, made age-related discriminatory remarks and demoted her after she complained about a co-worker's repeated, sexually explicit comments. In its answer, the Board of Education contended that the re-assignment was a lateral transfer and was justified by nondiscriminatory reasons. The trial court summarily dismissed the complaint finding, *inter alia*, that Plaintiff failed to establish a prima facie case of age discrimination or retaliation, and that the Board produced undisputed evidence of legitimate, nondiscriminatory reasons for transferring Plaintiff. We respectfully disagree, having concluded that Plaintiff identified and produced evidence to establish a prima facie case for both claims and to create a genuine issue of fact concerning whether the Board's stated reasons are pretexts for discriminatory or retaliatory animus. For these reasons, the Board was not entitled to summary judgment. Accordingly, we reverse and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined

Terry A. Fann and Kerry Knox, Murfreesboro, Tennessee, for the appellant, Susan R. Templeton.

Kenneth Shannon Williams and Cynthia A. Wilson, Cookeville, Tennessee, for the appellee, Macon County, Tennessee, Board of Education.

**OPINION**

From 1987 until 2014, Susan R. Templeton ("Plaintiff") was employed by the Macon County Board of Education ("Defendant"). After serving as a substitute teacher, Plaintiff was employed full time as an office clerk. For the past several years, Plaintiff served as the bookkeeper for Central Elementary School. Plaintiff worked in the school's front office, immediately next to the principal's office. Plaintiff shared the front office with the school's receptionist, Jackie Shockley, and the school nurse. Plaintiff's main duties as bookkeeper were to provide general bookkeeping services and pay bills. Plaintiff also was responsible for assisting Ms. Shockley by answering the phone and interacting with visitors, parents, and teachers while Ms. Shockley was busy or out of the office.

The record before us reveals no write-ups or disciplinary actions concerning Plaintiff. Nor does it reveal any reports of unsatisfactory job performance or evidence of general dissatisfaction with Plaintiff until after Daniel Cook became the principal at Central Elementary School in 2012.

In April 2013, Plaintiff met with Principal Cook to convey to him, for the first time, several concerns. Plaintiff's concerns included the fact that Ms. Shockley had repeatedly made sexual, lewd, and otherwise inappropriate comments in the small office they shared. One year later, in April 2014, Plaintiff again met with Principal Cook to express her discomfort regarding Ms. Shockley's "dirty talk."[1] Plaintiff also complained that she had a hard time keeping up with her bookkeeping responsibilities because Ms. Shockley regularly left work early. Principal Cook responded to Plaintiff by stating that he was satisfied with Ms. Shockley's job performance but he would look into the inappropriate remarks. Near the conclusion of the April 2014 meeting, Principal Cook told Plaintiff that "things" were "not going in the right direction for [the] office" and asked if she had ever considered "retiring."[2]

---

[1] Plaintiff testified by deposition that Ms. Shockley "talked about sex a lot" while they were working in the school's front office, and the comments made Plaintiff uncomfortable. The comments included a detailed description of a sexual fantasy involving Trace Adkins. Plaintiff also testified that Principal Cook heard Ms. Shockley make one of these remarks, but instead of immediately addressing its impropriety, Principal Cook said he was "just trying to ignore her." According to Ms. Shockley, Principal Cook did not address the comments until after Plaintiff's April 2014 complaint, and instead of saying they were entirely inappropriate and unacceptable, he said, *inter alia*, "don't do it again because other people found it offensive."

[2] In his deposition, Principal Cook admitted he might have discussed retirement with Plaintiff but said it was in response to a comment about her health. In its response to Plaintiff's additional statement of undisputed facts, Defendant did not dispute that, "[a]fter listening to plaintiff's concerns, Principal Cook asked plaintiff if she had ever considered 'retiring.'"

Ten days after the April 2014 meeting, Principal Cook informed Plaintiff he had decided to "move" her to a teacher-assistant position. Principal Cook finished the conversation by telling her "it would be in [her] best interests to just go ahead and retire."[3]

Plaintiff, then 62 years of age, refused to accept the position and immediately took a leave of absence. During the summer break, she officially retired. Plaintiff was replaced as the bookkeeper by a person 17 years younger than she, whom Plaintiff had trained for the job.[4]

In March 2015, Plaintiff commenced this action by filing a complaint for age discrimination and retaliation under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-210-101 to -1004 ("THRA"). Plaintiff alleged that Defendant demoted her because of her age and because of her complaint to Principal Cook about "sexually offensive, hostile activity." Defendant filed an answer denying the allegations and discovery ensued.

In July 2017, Defendant filed a motion for summary judgment along with a statement of undisputed facts. Plaintiff filed a response in opposition to the motion accompanied by a response to Defendant's statement of undisputed facts, in which she admitted some facts and denied others. Plaintiff also filed a separate statement of undisputed facts, to which Defendant responded by admitting some facts and denying others.

Following a hearing, and after asking for additional briefing, the trial court granted Defendant's motion for summary judgment by order entered in December 2017. Regarding Plaintiff's age-discrimination claim, the final order reads in pertinent part:

> The Court finds that the plaintiff has failed to carry her burden to establish all of the elements of her prima facie age discrimination case. In particular, the plaintiff's transfer from the bookkeeping position to a teacher's aide position was a lateral transfer without any reduction in salary or benefits. There is no proof in the record that the plaintiff's transfer to the teacher's aide position was a demotion or that the plaintiff was unable to perform the

---

[3] In his deposition, following repeated questions by Plaintiff's counsel to clarify his testimony, Principal Cook stated that he recalled talking with Plaintiff about retiring in a prior conversation and stated that he did not recall, but could not admit or deny, bringing up the option of retirement during the meeting when he informed Plaintiff she was being transferred.

[4] Plaintiff trained this individual to do the bookkeeping services prior to taking time off for surgery and medical leave in August 2013.

duties of that position or that she suffered a change in benefits or in work hours by the lateral transfer. Additionally, upon being informed that she would be reassigned at the start of the next school year, the plaintiff immediately took a voluntary leave of absence through the end of the school year. She then voluntarily retired from the defendant's employment prior to the start of the next school year. Accordingly, the Court finds the plaintiff was not actually or constructively discharged and suffered no adverse employment action. Inasmuch as the plaintiff has failed to establish all the necessary elements of a violation of the Tennessee Human Rights Act, the defendant is entitled to summary judgment on this claim.

Assuming arguendo, that the plaintiff had established the aforementioned elements the defendant may go forward and assert neutral reasons or more accurately one or more legitimate nondiscriminatory reasons existed for the challenged employment action. See, Tenn. Code Ann. § 4-21-311 (e). The Court finds that there is ample evidence in the record to support such neutral reasons for the challenged employment action. The plaintiff was unwilling or unable to consistently answer the office telephone which was one of the required duties of the school bookkeeper. Even though plaintiff's cafeteria and bookkeeping duties had largely been transferred to the Central Office, she nonetheless complained to the school's Principal that she had too much work to do and was overloaded. Her unwillingness to consistently fulfill her telephone duties caused the school nurse to have to answer the office telephone, which was not part of the nurse's job responsibilities. In her bookkeeping position the plaintiff was required to interact with teachers, yet several teachers complained to the Principal that the plaintiff was unapproachable. The plaintiff complained to the principal on multiple occasions that the school secretary was not performing her duties, and was leaving early with the Principal's approval requiring the plaintiff to have to work more. The Principal investigated her complaints and determined these were unfounded. The front office staff, including the plaintiff and the Principal as well as the school secretary and school nurse worked in a small area. It is important that personnel in close quarters need to work well together. The Principal perceived the plaintiff's complaints and second guessing of his decisions to be in conflict with the office staff and with himself, and to reflect an unwillingness or inability to perform her job. From the record the plaintiff complained about her inability to do the multi-tasking aspects of her bookkeeper's job such as having to answer the telephones, about teachers not doing as she asked, and about the Principal's decisions with other workers. The Court finds the plaintiff was not satisfying the Principal's reasonable expectations of the front office bookkeeping position. The Court further finds that the plaintiff was replaced in the bookkeeping position by Karen Burrow, a female who was

45 years of age at the time. Accordingly, the Court concludes that the plaintiff's replacement in the bookkeeping position was not a replacement by an individual outside the protective class and did not occur under circumstances giving rise to any inference of age discrimination. For all of these reasons and the entire record, the Court finds that the plaintiff has not established a prima facie case of age discrimination.

Even if the plaintiff had established a prima facie case of age discrimination, the above reasons articulated legitimate nondiscriminatory reasons for lateral transferring of the plaintiff to the teacher's aide position, and the plaintiff has not carried her burden of persuasion to establish pretext under the THRA § 4-21-311 (e). The Court finds that the reasons stated by the defendant for the plaintiff's lateral job assignment have a basis in fact and the plaintiff has not set forth sufficient evidence to create a disputed fact that the defendant's reasons are unworthy of belief or did not actually motivate her re-assignment to the teacher's aide position. The plaintiff made a choice to retire from the defendant's employ and the work force in general rather than to accept her lateral transfer to the teacher's aide position. The Court finds that the plaintiff has not carried her burden of showing pretext.

Regarding Plaintiff's retaliation claim, the final order reads in pertinent part:

[T]he plaintiff has also alleged retaliation for reporting improper sexual comments and conduct in the workplace. There are four (4) elements required to prove retaliation: (1) she engaged in activity protected by the THRA; (2) the defendant knew about the protected activity; (3) the defendant subsequently took a materially adverse employment action against the plaintiff; and (4) a causal connection exists between the plaintiff's protected activity and the resulting adverse action. The Court does not find that the plaintiff's report of occasional improper workplace comments as occurred here, made months after occurring, are protected conduct. From the proof it appears that the Principal promptly addressed her concerns. As set out above in more detail, the court finds that no materially adverse employment action was taken against the plaintiff. Finally, the plaintiff has failed to prove that but for her complaining of a "sexually offensive hostile work environment," she would not have been laterally transferred to the teacher's aide position, and all proof is to the contrary. Plaintiff relies on the timing between her complaint and a statement by the Principal inquiring about her retirement. However, timing alone and as applies in the specific facts of this case is insufficient proof of a causal connection between the plaintiff's reporting of what she saw as

offensive conduct and the decision to reassign to prove a prima facie case on this claim.

Even had the plaintiff established a prima facie case of retaliation for reporting a "sexually offensive hostile work environment," the defendant has stated legitimate nondiscriminatory reasons for its actions as set forth above, and the plaintiff has not carried her burden to establish pretext, as this Court discussed above.

The Court finds that there is no direct or circumstantial evidence of discriminatory intent by the defendant, that there are no material issues of disputed fact and so summary judgment is appropriate as to all claims asserted in this case.

This appeal followed.

## ISSUES

Plaintiff raises two issues that we paraphrase as follows:

(1) Did the trial court err by finding that Plaintiff failed to establish a prima facie case of age discrimination and unlawful retaliation?

(2) Did the trial court err in holding that Defendant's stated reasons for its employment action were undisputed and not pretext for unlawful discriminatory and retaliatory animus despite evidence of disparate treatment of a younger employee, discriminatory and retaliatory remarks, and the temporal proximity between Plaintiff's protected activity and her demotion?

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). As a result, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50–51 (Tenn. 1997).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving

party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264 (emphasis in original).

When a motion for summary judgment is made and supported as provided in Tenn. R. Civ. P. 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* Instead, the nonmoving party must respond with specific facts showing there is a genuine issue for trial. *Id.* A fact is material if it "must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

Because the trial court granted Defendant's motion under Tennessee Rule of Civil Procedure 56, we must accept Plaintiff's "evidence as true, and view both the evidence and all reasonable inferences that can be drawn therefrom in the light most favorable to the nonmoving party." *Shipley v. Williams*, 350 S.W.3d 527, 551 (Tenn. 2011) (citations omitted).

**ANALYSIS**

I.  METHOD FOR PROVING EMPLOYMENT DISCRIMINATION CLAIMS UNDER THE TENNESSEE HUMAN RIGHTS ACT

Like our federal counterparts, Tennessee courts have regularly used "the analytical framework developed by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) . . . to analyze employment discrimination and retaliation claims."[5] *Yount v. FedEx Express*, No. W2015-00389-COA-R3-CV, 2016 WL 1056958, at *4 (Tenn. Ct. App. Mar. 17, 2016) (citations omitted). The *McDonnell Douglas* framework allocates the burden of production and the order of presentation of proof in discrimination cases. *Wilson v. Rubin*, 104 S.W.3d 39, 49 (Tenn. Ct. App. 2002). "The goal of this approach is to progressively sharpen the inquiry into the elusive factual question of intentional discrimination." *Id.* at 50 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.8 (1981)).

In 2011, the Tennessee General Assembly codified the *McDonnell Douglas* framework in section 4-21-311(e) of the THRA. *See* Tenn. Code Ann. § 4-21-311(e); 2011 Tennessee Laws Pub. Ch. 461, § 1 (H.B. 1641) (effective June 10, 2011). As the

---

[5] Accordingly, "Tennessee's courts regularly consult the decisions of their federal counterparts for guidance when called upon to construe and apply the Tennessee Human Rights Act." *Wilson v. Rubin*, 104 S.W.3d 39, 48 (Tenn. Ct. App. 2002) (citations omitted).

trial court correctly stated in its ruling, this statute controls both of Plaintiff's claims. The statute reads in pertinent part:

> In any civil cause of action alleging a violation of this chapter or of § 8-50-103, the plaintiff shall have the burden of establishing a prima facie case of intentional discrimination or retaliation. If the plaintiff satisfies this burden, the burden shall then be on the defendant to produce evidence that one (1) or more legitimate, nondiscriminatory reasons existed for the challenged employment action. The burden on the defendant is one of production and not persuasion. If the defendant produces such evidence, the presumption of discrimination or retaliation raised by the plaintiff's prima facie case is rebutted, and the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the challenged employment action and that the stated reason was a pretext for illegal discrimination or retaliation. The foregoing allocations of burdens of proof shall apply at all stages of the proceedings, including motions for summary judgment. The plaintiff at all times retains the burden of persuading the trier of fact that the plaintiff has been the victim of intentional discrimination or retaliation.

Tenn. Code Ann. § 4-21-311(e).

Under this framework, "[t]he burden of proving the ultimate issue of unlawful employment discrimination always rests with the employee." *Wilson*, 104 S.W.3d at 49 (citing *Burdine*, 450 U.S. at 253; *Spann v. Abraham*, 36 S.W.3d 452, 464 (Tenn. Ct. App. 1999)). Accordingly, the employee has the initial burden of producing evidence "establishing a prima facie case of intentional discrimination or retaliation." Tenn. Code Ann. § 4-21-311(e). This burden "is an evidentiary standard, not a pleading requirement." *Wilson*, 104 S.W.3d at 50 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002)). By presenting evidence establishing a prima facie case, the employee creates a rebuttable presumption that the employer unlawfully discriminated against the employee. *Wilson*, 104 S.W.3d at 50 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 68–69 (1st Cir. 2002)). The burden then shifts to the employer "to produce evidence that one (1) or more legitimate, nondiscriminatory reasons existed for the challenged employment action." Tenn. Code Ann. § 4-21-311(e). This "requires the employer to clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Wilson*, 104 S.W.3d at 50 (citing *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999)). If the employer produces such evidence, the burden shifts back to the employee "to demonstrate that the reason given by the defendant was not the true reason for the challenged employment action and that the stated reason was a pretext for illegal discrimination or retaliation." Tenn. Code Ann. § 4-21-311(e).

An employee may demonstrate that the reason given by the defendant was not the real reason for the challenged employment action by identifying evidence already produced, *see Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) ("[T]he trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual[.]'") (quoting *Burdine*, 450 U.S. at 255 n.10), or by producing additional evidence that reveals "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's explanation," *Wilson*, 104 S.W.3d at 51 (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002)). Most commonly, employees accomplish this by identifying or producing evidence "(1) establishing that the proffered reasons have no basis in fact, (2) establishing that the proffered reasons did not actually motivate the adverse employment action, or (3) establishing that the proffered reasons were insufficient to motivate the adverse employment action." *Wilson*, 104 S.W.3d at 51 (citations omitted).

Evidence showing that the "employer's explanation is unworthy of credence" serves two purposes: (1) it permits triers-of-fact to conclude that the reason given by the defendant was not the true reason for the challenged employment actions, and (2) it serves as independent evidence from which "the trier of fact can reasonably infer . . . that the employer is dissembling to cover up a discriminatory purpose." *Id.* at 51 (quoting *Reeves*, 530 U.S. at 147–48). "[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Id*.

With the foregoing in mind, we shall analyze the issues in turn.

## II. PRIMA FACIE CASE OF AGE DISCRIMINATION

The phrase "prima facie case" in employment discrimination cases denotes "the establishment of a legally mandatory, rebuttable presumption." *Burdine*, 450 U.S. at 254 n.7 (citing 9 J. Wigmore, Evidence § 2494 (3d ed. 1940)). "The elements of a prima facie case [for discrimination] may vary depending upon the method of discrimination and the unique circumstances of each case." *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 708 (Tenn. 2000) (citing *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 775 (8th Cir. 1995)), *abrogated on other grounds by Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777, 779 (Tenn. 2010). "They were 'never intended to be rigid, mechanized, or ritualistic.'" *Wilson*, 104 S.W.3d at 51 (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577 (1978)).

In this appeal, both parties agree that the essential elements of Plaintiff's claim of age discrimination are stated in *Stewart v. Cadna Rubber Company*, No. W2013-00670-COA-R3-CV, 2014 WL 1235993 (Tenn. Ct. App. Mar. 26, 2014). Therefore, to establish a prima facie claim of age discrimination, Plaintiff must produce evidence that:

(1) she was at least 40 years of age at the time of the alleged discrimination . . . ;

(2) she was subjected to adverse employment action[6];

(3) she was qualified for the position; and

(4) she was replaced by a substantially younger person or . . . the termination occurred under circumstances giving rise to an inference that she was singled out for termination based on her age . . . .

*Id*. at *5 (citing *Kremp v. ITW Air Mgmt.*, 478 F. App'x 931 (6th Cir. 2012)).

### A. Protected Class Based on Age

It is undisputed that Plaintiff was over the age of forty at the time of the alleged discrimination. Therefore, she produced evidence to establish the first element of her prima facie case.

### B. Adverse Employment Action

As for the second essential element, the trial court found that Plaintiff "voluntarily retired," and "suffered no adverse employment action." The court also found "the [P]laintiff's transfer from the bookkeeping position to a teacher's aide position was a lateral transfer without any reduction in salary or benefits." Further, the court found there was no proof that the transfer to the teacher's aide position "was a demotion" or that "she suffered a change in benefits or in work hours by the lateral transfer."

---

[6] Although we have concluded, and both parties agree, that this essential element should be framed as whether Plaintiff was "subjected to an adverse employment action," the trial court framed this element as whether Plaintiff "was actually or constructively terminated." Although this language has been used in age-discrimination cases, *see, e.g., Wilson*, 104 S.W.3d at 52, neither party contends that it applies to this case. Based on the trial court's framing of this element, the court made the following additional findings:

Additionally, upon being informed that she would be reassigned at the start of the next school year, the plaintiff immediately took a voluntary leave of absence through the end of the school year. She then voluntarily retired from the defendant's employment prior to the start of the next school year. Accordingly, the Court finds the plaintiff was not actually or constructively discharged and suffered no adverse employment action. Inasmuch as the plaintiff has failed to establish all the necessary elements of a violation of the Tennessee Human Rights Act, the defendant is entitled to summary judgment on this claim.

- 10 -

Adverse employment actions include "demotion evidenced by a decrease in wage or salary, by a less distinguished title, or by a material loss of employment benefits; or a significant reduction of material responsibilities." *Barnes*, 48 S.W.3d at 707; *see also Spann*, 36 S.W.3d at 468 (holding that an employee's perception of a transfer "as a demotion to a position with diminished status and with fewer responsibilities" created a jury issue on whether the re-assignment constituted an adverse employment action). Contrary to Defendant's insistence that Plaintiff failed to produce any evidence that the transfer would have resulted in a meaningful change to the terms, conditions, or privileges of her employment, Plaintiff identified and produced evidence that the teacher-assistant position to which she was transferred paid $3.00 less per hour and was less prestigious.

Plaintiff testified that the teacher-assistant position paid approximately $11 per hour and that she was being paid approximately $14 per hour as the school's bookkeeper. Principal Cook testified that he knew "the bookkeeping position and the [front office] positions . . . pay more than teacher assistant positions do."[7] The only evidence in the record that disputes this fact is the testimony of former Director of Schools, Margaret Oldham, who testified that the transfer "should not" have resulted in a change in salary because of "a policy" of keeping employees at the same level of pay when they were "transferred to a lower position." In the following colloquy, Ms. Oldham explains her "policy":

Q.    And did you know [the] transfer would result in a reduction in pay of around $3 an hour?

A.    Transferred from one position to another should not have been a reduction in pay, since she had been there. If you transfer someone from one position to a lower position, the salary should be the same. The salary should not have changed.

.    .    .

[W]e would have taken care of that in the bookkeeper's office. Because the bookkeeper would have come to me and asked me would the salary be the same or would the salary be at a teacher-assistant level.

But that's something that you—when you've had a person working, you know, in a position for years and something comes up and arises that they be transferred to another position, the salary has to stay the same.

---

[7] Principal Cook also testified that Defendant provided him with a salary chart every year showing the salaries of all noncertified employees.

- 11 -

Q.      Where is that? Is that written down somewhere?

A.      That's just a policy that we've always—that I'd always upheld in Trousdale County, as well as Macon County.

As the foregoing reveals, the "stay the same" policy is Ms. Oldham's policy—not a written policy of the Macon County School District. Furthermore, Ms. Oldham would not have been in a position to assure that Plaintiff's salary for the 2014–15 school year would "stay the same" because Ms. Oldham retired at the end of the 2013–14 school year. Based on Principal Cook and Plaintiff's testimony that the new position would pay less per hour, and the uncertainty regarding the "stay the same" policy, we conclude that a reasonable jury could resolve this issue in Plaintiff's favor.

On the other hand, whether the transfer would have resulted in a decrease in status and a significant reduction in material responsibilities is not well developed in the record. Nonetheless, Ms. Oldham referred to the teacher-assistant position as a "lower position." Therefore, viewing this modest evidence in a light most favorable to Plaintiff, we find a reasonable jury could resolve this issue in Plaintiff's favor.

For the foregoing reasons, we conclude that Plaintiff produced evidence to establish the second essential element of her prima facie case of age discrimination.

## C.      Qualified for the Position

The third essential element is whether Plaintiff was qualified for the bookkeeper position.[8] The trial court made no finding concerning this element in its prima facie case analysis. The inquiry as to whether a plaintiff was qualified "should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003). Although Defendant contends that Plaintiff failed to produce evidence to establish she was qualified, we find Plaintiff identified and produced evidence that, if believed by a trier of fact, establishes that she possessed the required skills to perform the job's essential functions.

It is undisputed that Plaintiff served as the bookkeeper for approximately 15 years without a write-up, disciplinary action, or any expression of dissatisfaction other than Principal Cook's assertions that she was difficult to work with and had a bad attitude. This is significant because the fact that an employee held her or his position for an

---

[8] The trial court framed this element as whether Plaintiff's "work performance satisfied the employer's reasonable expectations." Although this language has been used in age-discrimination cases, *see, e.g., Wilson*, 104 S.W.3d at 52, neither party argues it applies in the present case.

extended period without incident shows the employee's "ability to perform the essential functions of the job to the satisfaction of his superiors." *See Bundy v. First Tennessee Bank Nat. Ass'n*, 266 S.W.3d 410, 417–18 (Tenn. Ct. App. 2007) (holding that an issue of material fact existed on whether the employee was qualified for his position when he had worked in the position for nine years without incident).

Nevertheless, Defendant contends Plaintiff was no longer qualified because there were "dynamic changes" in the responsibilities of the bookkeeping position after Principal Cook became principal. We find this contention disingenuous because it is contradicted by testimony in the record as well as an admission of Defendant in response to Plaintiff's statement of additional undisputed facts. Plaintiff testified that, when Principal Cook told her she was being transferred, he said to her, "You do a fine job with your bookkeeping." More significantly, in its response to Plaintiff's statement of additional undisputed facts, Defendant did not dispute "that [Ms. Templeton's] bookkeeping duties were satisfactory[.]"

"*At the prima facie stage, a court should focus on a plaintiff's objective qualifications to determine whether he or she is qualified for the relevant job.*"[9] *Wexler*, 317 F.3d at 575 (emphasis added); *see also MacDonald v. E. Wyoming Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991) (holding that a plaintiff can show she is qualified by presenting "credible evidence that she continued to possess the *objective qualifications* she held when she was hired") (emphasis added), *abrogated on other grounds by Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995). Thus, Principal Cook's perception that Plaintiff was difficult to work with and had a bad attitude is irrelevant to whether Plaintiff identified or produced evidence that she was qualified for the position.

For the foregoing reasons, we conclude that Plaintiff identified and produced evidence to establish the third essential element of her prima facie claim.

### D. Replaced By A Substantially Younger Employee

A plaintiff may establish the fourth essential element of a prima facie claim in two ways. The plaintiff may produce "evidence that the plaintiff was replaced by a

---

[9] Whether an employee was meeting the employer's subjective expectations remains relevant to whether the employer had a legitimate reason for taking the adverse action. *See, e.g.*, *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016) (considering whether an employee was "qualified" in its prima facie case analysis and considering whether the employee was meeting the employer's "reasonable expectations" in its analysis of whether the employer had a legitimate, nondiscriminatory reason for its action).

substantially younger employee,"[10] or demonstrate that the plaintiff was "treated less favorably than a similarly situated, younger employee was treated." *Bundy*, 266 S.W.3d at 416–17 (citations omitted). Defendant contends that Plaintiff has not presented sufficient evidence for a trier of fact to find circumstances giving rise to an inference of discriminatory intent. We disagree.

To create an inference of discriminatory intent, Plaintiff relies on the fact that she was replaced by someone 17 years her junior.[11] Although her replacement was over the age of 40 and, thus, a member of the same protected class, a plaintiff need only show she was replaced by a "substantially younger" employee to meet this element. *Id.* Furthermore, our courts have found that a 13-year difference between an employee and the person who replaced him or her is substantial. *See Frame v. Davidson Transit Organization*, 194 S.W.3d 429, 432–33, 439 (Tenn. Ct. App. 2005) (stating that Frame, who was 58 years old, made out a prima facie case by showing that he was within the protected class, he had experienced an adverse employment action in a job for which he was qualified, and his replacement, who was 13 years younger, was significantly younger). Therefore, Plaintiff has identified and produced evidence to establish the fourth element.

Having identified and produced evidence to establish all four essential elements, we conclude that Plaintiff established a prima facie case of age discrimination.

### III. PRIMA FACIE CASE OF RETALIATION

To establish a prima facie case of retaliation under the THRA, a plaintiff must show that (1) he or she engaged in activity protected by the THRA; (2) the employer

---

[10] Defendant contends that Plaintiff waived this argument by failing to make it before the trial court; she did not. Generally, parties are not "permitted to raise issues on appeal that they did not first raise in the trial court." *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010) (citing *Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006); *City of Cookeville ex rel. Cookeville Reg'l Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 905–06 (Tenn. 2004)). "Determining whether parties have waived their right to raise an issue on appeal should not exalt form over substance." *Powell*, 312 S.W.3d at 511. "Appellate courts must carefully review the record to determine whether a party is actually raising an issue for the first time on appeal." *Id*. After reviewing the record, we find this issue was raised and decided in the trial court. In its supplementary memorandum to the trial court, Defendant argued that Plaintiff could not satisfy her prima facie burden because, *inter alia*, she "was replaced by Karen Burrow, age 45 years, who is in the protected class." Subsequently, the trial court determined that Plaintiff's transfer did not occur under circumstances supporting an inference of age discrimination because Defendant replaced her with "a female who was 45 years of age at the time." Thus, we find the issue proper for consideration on appeal.

[11] Plaintiff, 62 years of age at the time, was replaced as the school's bookkeeper by Karen Burrow, who was 45 years of age at the time.

knew about the protected activity; (3) the employer took a materially adverse action against the plaintiff; and (4) a causal connection existed between the plaintiff's activity and the adverse action. *Ferguson v. Middle Tennessee State Univ.*, 451 S.W.3d 375, 382 (Tenn. 2014) (citing *Sykes v. Chattanooga Hous. Auth.,* 343 S.W.3d 18, 29 (Tenn. 2011); *Allen v. McPhee*, 240 S.W.3d 803, 820 (Tenn. 2007)). It is undisputed that Plaintiff's complaint to Principal Cook regarding the overtly sexual and lewd comments in the office was a protected activity and that Defendant knew about the protected activity. We have also ruled that Plaintiff produced sufficient evidence to establish that the transfer was an adverse employment action. Therefore, Plaintiff identified and produced evidence to establish the first three elements of her retaliation claim.

As a result, the only remaining element to consider is whether Plaintiff can establish a causal connection between her complaint and the transfer. "[C]lose temporal proximity between a protected activity and an adverse employment action is a fact that an employee may offer to demonstrate that a genuine issue of material fact exists as to the causation element." *Sykes*, 343 S.W.3d at 31. Proximity of fewer than two months is "close" for this purpose. *Allen*, 240 S.W.3d at 823, *abrogated on other grounds by Gossett*, 320 S.W.3d 777. As with other facts proffered by an employee in opposition to a summary judgment motion, "the court should consider temporal proximity in a light most favorable to the nonmoving party." *Sykes*, 343 S.W.3d at 31.

Here, it is undisputed that Principal Cook informed Plaintiff about the transfer ten days after Plaintiff's April 2014 complaint about the overtly sexual and lewd comments in the office. Accordingly, Plaintiff identified and produced sufficient evidence to establish all four elements of a prima facie case of retaliation.

## IV.    LEGITIMATE, NONDISCRIMINATORY REASON

Because Plaintiff established prima facie cases of age discrimination and retaliation, the burden shifted to Defendant to produce evidence that "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Wilson*, 104 S.W.3d at 50 (citing *Bauer*, 169 F.3d at 966). The trial court found that Defendant met its burden by producing evidence that Plaintiff was unable or unwilling to perform several of her job responsibilities. Specifically, the court found that Plaintiff's job required her to interact with teachers, answer the school telephone when needed, and work well in close quarters with other office staff. The court concluded that Plaintiff was not meeting Principal Cook's performance expectations because (1) she was unwilling or unable to answer the telephone when needed; (2) she complained to Principal Cook about having too much work to do and being overloaded; (3) she blamed Ms. Shockley and the school teachers for making her job more difficult; and (4) she second-guessed Principal Cook's management decisions. The gravamen of Defendant's proffered reasons for transferring Plaintiff is that Plaintiff was not adequately performing her office-related responsibilities and was not getting along with her co-workers.

In its brief, Defendant failed to cite to the record to support these conclusory allegations. Nonetheless, by searching through the record, we have determined that Defendant produced evidence that, if believed by a jury, would support a finding that unlawful discrimination was not the cause of the transfer. Principal Cook's deposition and sworn declaration alleged that Plaintiff had not been answering the phone promptly and that her attitude precluded the establishment of a productive relationship between her and the schoolteachers. Defendant's reasons for transferring Plaintiff are supported, to a much lesser degree, by Ms. Shockley and Ms. Burrow's deposition testimony. Both testified that some schoolteachers found Plaintiff unapproachable.[12]

"[A]n employer may make a subjective judgment to [take an adverse employment action] for any reason that is not discriminatory." *Grady v. C. B. Ragland Co.*, No. 87-74-II, 1987 WL 13399, at *8 (Tenn. Ct. App. July 8, 1987) (quoting *Walter v. KFGO Radio*, 518 F.Supp. 1309, 1314 (D.N.D. 1981)). Accordingly, an employer may take an adverse employment action because of a "personality conflict" without violating anti-discrimination laws. *See Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir. 1982) ("Personality conflicts alone cannot supply a basis for an ADEA claim.").

Therefore, Defendant's evidence, if believed by a jury, would support a finding that illegal discrimination was not the cause of the transfer.

## V.    PRETEXT

Having found that Defendant satisfied its burden of production, we next consider whether Plaintiff presented sufficient evidence "to demonstrate that the reason given by the defendant was not the true reason for the challenged employment action and that the stated reason was a pretext for illegal discrimination or retaliation." Tenn. Code Ann. § 4-21-311(e). The trial court found that Plaintiff had not "carried her burden of persuasion" on this issue and had not "set forth sufficient evidence to create a disputed fact that the defendant's reasons are unworthy of belief or did not actually motivate her re-assignment to the teacher's aide position." We respectfully disagree.

As for Plaintiff's "attitude," Principal Cook states in his declaration that Plaintiff "was making those around her miserable, and . . . seemed to have a personality conflict with office staff." This statement, however, is contradicted by both Ms. Shockley and Ms. Thompson, the two people who were around Plaintiff the most, who testified that they had "good" working relationships with Plaintiff and never complained about her to Principal Cook. Further, Ms. Oldham testified that she approved the transfer based on,

---

[12] While the admissibility of second-hand testimony regarding the schoolteachers' perceptions of Plaintiff is questionable, the trial court made no finding on this issue and neither party has raised it before this court.

- 16 -

*inter alia*, Principal Cook's report that there were "ill feelings" between Plaintiff and Ms. Shockley. Because Ms. Shockley denied this fact under oath, Plaintiff demonstrated that this reason may not have been the true reason for the challenged employment action and that it may be a pretext for illegal discrimination or retaliation. *See* Tenn. Code Ann. § 4-21-311(e).

Defendant also contends that Principal Cook's decision was based on Plaintiff's relationship with "the schoolteachers" and Principal Cook, rather than with Ms. Shockley and Ms. Thompson. We find Defendant's assertion illogical because the transfer to a teacher-assistant position necessitated that Plaintiff work directly with the schoolteachers. Defendant's explanation is also contradicted by Principal Cook's notes from his meeting with Plaintiff.[13] Principal Cook wrote that he transferred Plaintiff to a teacher-assistant position to "limit her interaction with many personnel whom she had issues with." Furthermore, the significance of Principal Cook's testimony that schoolteachers told him they could not approach Plaintiff is offset by his testimony that these complaints were not "that big of a deal to [him]" because "[c]ommunication is going to be a problem at times" when "[y]ou've got 55 people working with you."

As for Plaintiff's work performance, the only evidence that Plaintiff was not fulfilling her responsibilities comes from Principal Cook. In his deposition, Principal Cook testified that he made occasional comments to Plaintiff that he expected her to answer the phone when it was ringing and to answer the door when someone was there. But he also testified that these conversations were not "sit-down conferences" and were "just passing by as I give instructions to all the employees at Central." Like Principal Cook's admission that he did not find the schoolteacher's complaint's "that big of a deal," Principal Cook's testimony that he did not find Plaintiff's job performance worthy of a sit-down conversation undermines this explanation's credibility.

Principal Cook also criticizes Plaintiff's job performance in his sworn declaration, stating that Plaintiff "rarely helped office staff with matters such as attendance and answering the telephone." However, Ms. Shockley contradicts Principal Cook by testifying that Plaintiff did her job and was helpful in the office. Moreover, Principal Cook's meeting notes—which he purportedly wrote immediately after informing Plaintiff of the transfer—do not mention Plaintiff's job performance as a reason for the transfer. That Principal Cook's initial recordation of their conversation conspicuously omits any reference to her work performance is enough for a reasonable jury to discount Defendant's reasoning. *See Gaglioti v. Levin Grp., Inc.*, 508 F. App'x 476, 482 (6th Cir. 2012) (holding the defendant's failure to raise employee's job performance as a reason for the employee's termination until after litigation commenced was "enough for a jury to

---

[13] Principal Cook's notes were admitted without objection as an exhibit to his deposition.

discount this argument"); *Wheet v. Greenwood Ford, Inc.*, No. 96-5368, 1997 WL 589270, at *3 (6th Cir. Sept. 23, 1997) (affirming jury's conclusion that the defendant's reason for firing the plaintiff was pretextual when the defendant relied on a different explanation when it fired the plaintiff).

In addition to these contradictions, Plaintiff points to Principal Cook's comments about her retirement and the temporal proximity between her complaint and the transfer as circumstantial evidence of discriminatory intent. Comments about retirement are evidence from which a jury may infer that the employer's reason for its action was a pretext for discrimination. *See Walls v. Johnson*, 229 F. Supp. 3d 678, 683, 686 (E.D. Tenn. 2017) (finding that the question, "Why don't you go ahead and retire and get out of this mess?" created a genuine issue of fact on pretext). Temporal proximity between a protected activity and an adverse action "is a strong indicator of pretext when accompanied by some other, independent evidence." *Bell v. Prefix, Inc.*, 321 F. App'x 423, 431 (6th Cir. 2009) (quoting *DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 393–94 (6th Cir. 2005)). It is undisputed that Defendant transferred Plaintiff ten days after she made her last complaint about sexually explicit conversations and that Principal Cook mentioned retirement within close proximity to the transfer. Plaintiff testified that Principal Cook asked her if she "ever considered retiring" after she complained about Ms. Shockley's "dirty talk." She also testified that Principal Cook suggested "it would be in [her] best interests to just go ahead and retire" after he informed Plaintiff she was being transferred. In his deposition, Principal Cook did not deny bringing up retirement with Plaintiff; he just could not recall in which conversation it was mentioned.[14]

While there is no evidence to contradict Principal Cook's assertion that he did not get along with Plaintiff, the credibility of Principal Cook is at issue; therefore, summary judgment should not be based solely on this testimony. *See Morgan v. Superior Catering Servs.*, No. E2014-00005-COA-R3-CV, 2015 WL 1594011, at *11 (Tenn. Ct. App. Apr. 7, 2015) (finding that the credibility of a witness who testified that the employee was fired because of a personality conflict precluded a directed verdict); *see also Barnes*, 48 S.W.3d at 706 (finding that "[w]hether the communication problems arose from a personality conflict or were a consequence of the [employee's protected characteristic] was a disputed issue of fact"), *abrogated on other grounds by Gossett*, 320 S.W.3d 777; *Pruett v. Wal-Mart Stores, Inc.*, No. 02A01-9610-CH-00266, 1997 WL 729260, at *8 (Tenn. Ct. App. Nov. 25, 1997) (finding that the employee created an issue of material fact by submitting testimony denying supervisor's assessment of her attitude).

---

[14] In its response to Plaintiff's statement of undisputed facts, Defendant did not deny that Principal Cook made a comment about Plaintiff's retirement in their April 2014 meeting.

What is important here is not whether Plaintiff refuted every piece of evidence supporting Defendant's reasons for her transfer. Neither of Plaintiff's claims requires her to establish that an illegitimate criterion was the *sole* reason for the transfer. *See Gossett*, 320 S.W.3d at 782 ("A legitimate reason for discharge . . . is not always mutually exclusive of a discriminatory or retaliatory motive and thus does not preclude the possibility that a discriminatory or retaliatory motive played a role in the discharge decision."); *cf. Williams v. City of Burns*, 465 S.W.3d 96, 110 (Tenn. 2015) (holding the Tennessee Public Protection Act "requires the plaintiff to prove that retaliation for the protected conduct was the *sole* reason" for the plaintiff's discharge). What is important is whether the inconsistencies, contradictions, and other independent evidence create a credibility issue that a trier of fact must resolve. *See Frame*, S.W.3d at 440 (holding that the credibility of the employee's supervisor was a material issue when the employer's reason for terminating the employee was almost entirely dependant on the supervisor's testimony). At the summary judgment phase, the plaintiff need only "present some evidence, whether direct or circumstantial, which is sufficient to create a genuine issue of material fact as to the motivations of the defendant." *Dennis v. White Way Cleaners, L.P.*, 119 S.W.3d 688, 694 (Tenn. Ct. App. 2003).

At the summary judgment stage, a plaintiff's burden is to identify or produce evidence that, if believed by the jury, would reveal "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's explanation." *Wilson*, 104 S.W.3d at 51 (quoting *Garrett*, 305 F.3d at 1217). Defendant's stated reasons for its actions, the transfer, are almost entirely based on Principal Cook's testimony, and Plaintiff showed weaknesses, inconsistencies, and contradictions sufficient to place at issue Principal Cook's credibility. This is significant for the purposes of summary judgment because Defendant's stated reasons for the transfer are based almost entirely upon Principal Cook's testimony. By placing at issue Principal Cook's credibility, Plaintiff has placed at issue the validity of Defendant's stated reasons for the transfer. *See Frame*, 194 S.W.3d at 441; *see also Wilson*, 104 S.W.3d at 51. Because facts material to Defendant's defense are disputed and a trier of fact could find that the reasons for the transfer were pretextual, summary dismissal is not appropriate. *Id*.

## IN CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Macon County, Tennessee, Board of Education.

_____
FRANK G. CLEMENT JR., P.J., M.S.