IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 10, 2024 Session

## ROBERT W. HALLIMAN v. AUSTIN PEAY STATE UNIVERSITY

**Appeal from the Chancery Court for Montgomery County**
**No. MCCHCVCD-19-39   Ben Dean, Chancellor**

_____

**No. M2023-01326-COA-R3-CV**

_____

This is an action for violation of the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101 to -1004 ("THRA"). The plaintiff, an associate professor at a state university, applied for promotion to the rank of full professor. While his application was under review, the plaintiff filed an age discrimination charge against the university with the Equal Employment Opportunity Commission ("EEOC"). A short time later, the university denied the plaintiff's promotion based on his alleged lack of high-quality scholarship. The trial court dismissed the action at the summary judgment stage, reasoning that the plaintiff had not produced evidence to rebut the university's stated reason for denying his promotion. This appeal followed. The plaintiff contends that the trial court erred because there was evidence that the university's administration knowingly violated university policy by reevaluating the merits of the plaintiff's peer-reviewed scholarship. We affirm the trial court's judgment in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

Joe Weyant, Nashville, Tennessee, for the appellant, Robert W. Halliman.

Jonathan Skrmetti, Attorney General and Reporter; J. Matthew Rice, Solicitor General; and Jeffrey B. Cadle, Assistant Attorney General, for the appellee, Austin Peay State University.

## OPINION

### FACTS AND PROCEDURAL HISTORY

Austin Peay State University ("APSU") is a public university located in Clarksville, Tennessee. Dr. Robert W. Halliman ("Plaintiff") is an associate professor in the

Department of Leadership and Organization Administration at APSU's College of Behavioral and Health Sciences.

In June 2018, Plaintiff applied for a promotion to the rank of professor, and in August 2018, Plaintiff filed a charge of discrimination with the EEOC related to a prior adverse employment action taken by APSU.

Per APSU policy, Plaintiff's application for promotion was reviewed at the department, college, and university level. In September 2018, Plaintiff received positive recommendations from his department's promotion committee and chair. In October 2018, Plaintiff received a positive recommendation from his college's promotion committee as well as the college's interim dean.

At the university level, APSU's provost, Dr. Rex Gandy, asked other APSU faculty members to re-evaluate the quality of Plaintiff's already peer-reviewed papers. The feedback was universally negative. Based on this and his own review, Dr. Gandy concluded that Plaintiff's scholarship did not meet the rigorous quality standards that APSU expects from candidates for the terminal rank of professor. Accordingly, Dr. Gandy recommended a denial of Plaintiff's application.

Plaintiff then exercised his right to appeal Dr. Gandy's decision to the University Tenure and Promotion Appeals Board. The Appeals Board agreed that Plaintiff's scholarship "appear[ed] to be substandard" and did not "meet the level of scholarship that is normally expected from an associate professor." Nonetheless, the Board concluded that Plaintiff's papers met his department's published criteria for promotion because the papers had been "accepted by peer reviewed journals" and "went through the peer reviewed process."

Plaintiff's application then went to the ultimate decision maker, APSU President Dr. Alisa White. After speaking with Dr. Gandy and reviewing some of Plaintiff's scholarship, Dr. White concurred with Dr. Gandy's assessment. Thus, in December 2018, Dr. White informed Plaintiff that she was denying his application.

Plaintiff commenced this action in December 2019 by filing a complaint against APSU for breach of contract, age discrimination, and retaliation. Plaintiff asserted, *inter alia*, that he "met all requirements for a promotion" and that his EEOC charge "was a substantial or motivating factor in APSU's refusal to promote [him] to the position of full Professor." Plaintiff alleged that Dr. Gandy's substantive review of Plaintiff's peer-reviewed scholarship constituted a violation of APSU's promotion policies. According to Plaintiff, those policies did not allow "reviewers' opinions of a candidate's scholarship to override evidence of peer-reviewed publications."

After answering the complaint, APSU moved to dismiss Plaintiff's breach of contract claim on the ground that the trial court lacked subject matter jurisdiction. APSU

reasoned that Plaintiff's contract claim fell within the exclusive jurisdiction of the Tennessee Claims Commission under Tennessee Code Annotated § 9-8-307(a)(L). The trial court agreed, granted APSU's motion, and dismissed the contract claim.

Meanwhile, the parties deposed Dr. White, Dr. Gandy, and Plaintiff. Dr. White testified that the evaluation process for faculty promotions included subjective and objective components. She explained that the quantity of a faculty member's scholarship was one sign of achievement but that she also looks "for a certain level of quality." In Plaintiff's case, Dr. White said she based her decision on her own review of Plaintiff's work as well as the recommendation of Dr. Gandy.

For his part, Dr. Gandy confirmed that he was in charge of maintaining APSU's policies and was "pretty familiar" with them, particularly the promotion policies. Like Dr. White, Dr. Gandy testified that APSU's promotion policies require consideration of a candidate's scholarship "as objectively as possible," along with a review of the department and college-level recommendations. Dr. Gandy maintained that, to meet APSU's standard for research and scholarship, peer-reviewed scholarship had to be "significant" and "high quality."

Dr. Gandy testified that, in Plaintiff's case, his evaluation was based on several factors, including the reputation of the publishing entities and the content of the papers. Dr. Gandy described Plaintiff's papers as scoring a "1 out of 10" and said that he could not determine whether one of Plaintiff's papers was peer-reviewed because the organization that published it was no longer in existence.

In contrast, Plaintiff testified that there were "clear statements in policy that say evidence of peer review is evidence of high-quality scholarship." But Plaintiff conceded that not all peer-reviewed articles are high quality and that determining whether a publication met APSU standards would require some subjective evaluation of factors such as the reputation of the publisher. In particular, Plaintiff agreed that an additional level of review might be necessary if the publication outlet had "a bad reputation."

In June 2023, APSU moved for summary judgment on Plaintiff's remaining claims. APSU argued, *inter alia*, that it had produced evidence of a legitimate, nondiscriminatory reason for denying Plaintiff's application and that Plaintiff had not produced evidence to show this reason was a pretext for discrimination or retaliation. In response, Plaintiff maintained that he met all published standards for promotion to full professor and that Dr. Gandy and Dr. White's stated reasons for denying the promotion were "not supported by University Policy whatsoever."

After a hearing, the trial court granted APSU's motion and dismissed Plaintiff's remaining claims for violation of the THRA. The court held that Plaintiff had not established a prima facie case of age discrimination because there was no evidence that "other employees of similar qualifications who were not members of the protected class

received promotions." And regarding both the age discrimination and retaliation claims, the court found Plaintiff failed to present evidence capable of showing that APSU's purported reason for denying Plaintiff's application was pretextual.

This appeal followed.

## ANALYSIS

As an initial matter, we have concluded that Plaintiff waived his appeal of the trial court's dismissal of his breach of contract and age discrimination claims.

First, as APSU points out, the trial court dismissed Plaintiff's age discrimination claim on two independent grounds. The court held (1) that Plaintiff failed to make a prima facie case of discrimination and, even if he did, (2) that Plaintiff failed to show APSU's proffered reason for denying the promotion was pretextual. Plaintiff has not challenged the court's first holding. Consequently, we must affirm the dismissal of Plaintiff's age discrimination claim. *See Buckley v. Elephant Sanctuary in Tennessee, Inc.*, 639 S.W.3d 38, 55 (Tenn. Ct. App. 2021). ("[W]here a trial court provides more than one separate and independent ground for its judgment and a party fails to appeal one or more of the independent grounds, we must affirm the judgment of the trial court on the ground that was not challenged on appeal.").

Second, in his appellate brief, Plaintiff failed to develop a legal argument on why the trial court had subject matter jurisdiction over his contract claim. Plaintiff cites one unpublished case, *Roberson v. University of Tennessee*, No. C.A. 754, 1988 WL 74236 (Tenn. Ct. App. July 19, 1988), and one memorandum opinion. We note that, under Tennessee Court of Appeals Rule 10, memorandum opinions "shall not be cited or relied on for any reason in any unrelated case." Thus, the only reliable authority cited by Plaintiff is *Roberson*.

In *Roberson*, we held that the Tennessee Claims Commission Act did not deprive a trial court of jurisdiction to adjudicate a THRA claim because "the more specific comprehensive legislation addressing the special subject matter of human rights and discrimination was intended to survive the more general language of the Claims Act." *Id*. at *3. Thus, *Roberson* stands for the proposition that THRA claims are exempt from the Claims Commission's "exclusive jurisdiction" over contract claims against the State of Tennessee. *See* Tenn. Code Ann. § 9-8-307(a)(1), (a)(1)(L).

But the issue raised by Plaintiff in this appeal is whether a trial court has jurisdiction over contract claims against the State when those claims arise from the same operative facts as a contemporaneously filed THRA claim. Plaintiff has not, however, developed a cognizable argument on this point. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal

argument, the issue is waived." *Sneed v. Bd. of Pro. Resp. of Supreme Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010).

For these reasons, we conclude that the only viable issue raised by Plaintiff on appeal relates to Plaintiff's retaliation claim. In particular, the dispositive issue is whether Plaintiff's evidence at the summary judgment stage created a genuine issue of material fact on whether APSU's purported reason for denying his promotion was a pretext for unlawful retaliation.

This court "review[s] a trial court's decision on a motion for summary judgment de novo, with no presumption of correctness." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, we must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *See id.* We must "view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Rye*, 477 S.W.3d at 251.

The THRA gives a civil cause of action to "[a]ny person injured by any act in violation of [the Act]." Tenn. Code Ann. § 4-21-311(a). Relevant here, it is a violation of the THRA to retaliate against a person "because such person has opposed a practice declared discriminatory by this chapter or because such person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter." *Id*. § 4-21-301(a)(1). All THRA claims are governed by the burden-shifting procedures in Tennessee Code Annotated § 4-21-311, which state:

> In any civil cause of action alleging a violation of this chapter or of § 8-50-103, the plaintiff shall have the burden of establishing a prima facie case of intentional discrimination or retaliation. If the plaintiff satisfies this burden, the burden shall then be on the defendant to produce evidence that one (1) or more legitimate, nondiscriminatory reasons existed for the challenged employment action. . . . If the defendant produces such evidence, the presumption of discrimination or retaliation raised by the plaintiff's prima facie case is rebutted, and the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the challenged employment action and that the stated reason was a pretext for illegal discrimination or retaliation.

Tenn. Code Ann. § 4-21-311(e). This procedure applies "at all stages of the proceedings, including motions for summary judgment." *Id*.

Here, we are concerned only with whether Plaintiff satisfied his burden at the summary judgment stage to produce prima facie evidence that the reason given by APSU "was not the true reason for the challenged employment action and that the stated reason was a pretext for illegal . . . retaliation." *See id*. In other words, the issue is whether Plaintiff presented "evidence demonstrating that the articulated reason is pretextual and that the defendant's action was actually motivated by a desire to retaliate against the employee." *Allen v. McPhee*, 240 S.W.3d 803, 821 (Tenn. 2007), *abrogated on other grounds by Gossett v. Tractor Supply Co.*, 320 S.W.3d 777 (Tenn. 2010).

A plaintiff need not refute "every piece of evidence supporting [the d]efendant's reasons for [the adverse employment action]." *Templeton v. Macon Cnty.*, 576 S.W.3d 691, 706 (Tenn. Ct. App. 2018). Instead, "[w]hat is important is whether the inconsistencies, contradictions, and other independent evidence create a credibility issue that a trier of fact must resolve. *Id*. (citing *Frame v. Davidson Transit Org.*, 194 S.W.3d 429, 441 (Tenn. Ct. App. 2005)). "At the summary judgment phase, the plaintiff need only 'present some evidence, whether direct or circumstantial, which is sufficient to create a genuine issue of material fact as to the motivations of the defendant.'" *Id*. (quoting *Dennis v. White Way Cleaners, L.P.*, 119 S.W.3d 688, 694 (Tenn. Ct. App. 2003)). As our Supreme Court has observed,

> Circumstantial evidence that is pertinent and probative on the issue of . . . retaliatory intent includes, but is not limited to, (1) the temporal proximity of the adverse action to the complaint; (2) a pattern of workplace antagonism after a complaint; (3) an employer's failure to adhere to established company policy in dealing with the employee; (4) discriminatory treatment when compared to similarly situated employees; (5) evidence of a good work history and high or solid performance evaluations of the employee; (6) sudden and marked changes in an employee's performance evaluations after the exercise of the employee's protected rights; and (7) evidence tending to show that the employer's stated reason for [the adverse employment action] was false.

*Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 29–30 (Tenn. 2011) (citations omitted).

"Once the employer's stated justification for the decision has been eliminated, 'discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.'" *Goree v. United Parcel Serv., Inc.*, 490 S.W.3d 413, 433 (Tenn. Ct. App. 2015) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S. Ct. 2097 (2000)). And "[i]f the only reason an employer offers for its decision is a lie, 'the inference that the real reason was a forbidden one . . . may rationally be drawn.'" *Id*. (quoting *Versa v. Pol'y Stud., Inc.*, 45 S.W.3d 575, 582 (Tenn. Ct. App. 2000)).

Here, the trial court held that APSU presented evidence of a legitimate reason for denying Plaintiff's promotion by producing the deposition testimony of Dr. White and Dr. Gandy. Each said that Plaintiff's scholarship failed to meet the standard for promotion set by APSU's policies.

Plaintiff contends that he produced circumstantial evidence from which a rational finder-of-fact could conclude that APSU's reason was pretextual by showing (1) that his application received positive reviews at all levels before reaching Dr. Gandy; (2) that Dr. Gandy and Dr. White had intimate knowledge of APSU's promotion policies; and (3) that Dr. Gandy and Dr. White nonetheless violated the policies by evaluating the substance of Plaintiff's peer-reviewed scholarship. In other words, Plaintiff alleges that APSU failed "to adhere to established company policy." *See Sykes*, 343 S.W.3d at 29.

Resolving this issue requires us to interpret and construe APSU's policies and procedures. We interpret university policies using the same rules of construction generally applicable to contracts. *See Pack v. Freed-Hardeman Univ.*, No. W2021-00311-COA-R3-CV, 2023 WL 2207390, at *3 (Tenn. Ct. App. Feb. 24, 2023).

Plaintiff contends that "APSU policy repeatedly states that the standard for quality of publications is to publish in peer-reviewed journals, or other peer-reviewed media" and that "[n]owhere in APSU policy does it allow a promotion reviewer's subjective assessment of the quality of a candidate's peer-reviewed published articles to override the independent peer review." According to Plaintiff, "Objectivity is the requirement of the policy." We respectfully disagree.

Academic promotion at APSU is governed by three documents: (1) APSU Policy 2:063, "Policy on Academic Promotion" ("the Promotion Policy"); (2) APSU Policy 1:025, "Policy on Academic Tenure" ("the Tenure Policy"); and (3) APSU's "Tenure and Procedures and Guidelines" ("the Tenure Guidelines").[1] These documents identify three areas in which each candidate is evaluated: "Academic Assignment," "Scholarly and

---

[1] Plaintiff also contends that he met the requirements for promotion because he met his department's separate criteria for scholarly achievement. APSU's Promotion Policy requires each department to develop its own promotion guidelines and states that those guidelines cannot be less restrictive than the university-wide guidelines. According to Plaintiff, his department's guidelines required faculty members to have at least two scholarly works published in two peer-reviewed outlets over the last five years. Our review of this argument, however, is precluded by the fact that no copy of the department policy appears in the record. Plaintiff's citation leads to APSU's university-wide Tenure Policy. Regardless, Plaintiff represents that the quality standard for scholarship is the same under the department and university policies.

Creative Achievement," and "Professional Contributions and Activities." Plaintiff's application was denied on the sole ground of inadequate scholarly achievement.

The Promotion Policy describes "[t]he minimum rank qualifications . . . for promotion in academic rank." Subject to some exceptions not applicable here, to reach the rank of professor, faculty must have, *inter alia*, "[d]ocumented evidence of sustained **high quality** professional productivity." (Emphasis added). This evidence may include "evidence of . . . **superior** scholarly and creative achievement." (Emphasis added). Similarly, the Tenure Policy states in relevant part as follows:

> A candidate for [promotion][2] must present **evidence** of his/her research, scholarship and/or creative activities when he/she applies . . . . Such evidence should cite books, journal articles, monographs, creative activities, performances, or exhibitions that have undergone appropriate peer review. Research publications in refereed journals or media of similar quality are considered reliable **indicators** of research/scholarly ability. . . . Books published by reputable firms and articles in refereed journals, reviewed by recognized scholars, are **more significant** than those that are not subjected to such rigorous examination. It should be emphasized that **quality is more important than quantity**.
>
> .     .     .
>
> Research and scholarly and creative activities are important to the University's role in society. **Clear evidence of the quality of work shall be a part of every evaluation, including evaluations from Deans and directors supervising special programs in which the faculty member participates**.

(Emphasis in original omitted) (emphasis added). And like the Tenure Policy, the Tenure Guidelines emphasize that "[c]lear evidence of the **quality** of work shall be part of every evaluation." (Emphasis added).

We conclude that the plain language of APSU's promotion policies contemplates that a subjective assessment of scholarly work is appropriate and may be necessary to determine whether a candidate's work meets the "high quality" standard necessary for promotion to the terminal rank of professor. While peer-reviewed work is defined as "evidence" of scholarly achievement, the policies do not state that peer review is an uncontestable proxy for quality.

---

[2] The Tenure Policy uses the word "tenure" but states that these provisions also apply to promotion evaluations.

For this reason, we conclude that the quality of Plaintiff's peer-reviewed scholarship was not exempt from further review by APSU administrators during the review process. Accordingly, Plaintiff failed to produce evidence that Dr. Gandy and Dr. White violated APSU's academic promotion policies. Without this evidence, Plaintiff's theory of retaliatory intent fails.

For this reason, we affirm the trial court summary judgment on Plaintiff's THRA retaliation claim.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Robert W. Halliman.

_____
FRANK G. CLEMENT JR., P.J., M.S.